### UNITED STATES v. REED.

(Circuit Court, S. D. New York. May 25, 1897.)

1. PROTECTION OF SEAMEN—UNSUITABLE FOOD—PENALTY—EVIDENCE.

In order to justify a conviction under Rev. St. § 5347, imposing a penalty upon the master or other officer of a vessel who withholds suitable food and nourishment from the crew, each of the statutory elements of lack of a suitable food supply, absence of justifiable cause, and the presence of malice, hatred or revenge, must be found beyond a reasonable doubt.

2. SAME—SCURVY—EVIDENCE.

Where there is evidence that every one of a crew was afflicted with scurvy, of which several died, and that the ordinary cause of that disease is lack of

suitable food, the jury are justified, unless some other cause is shown, in finding that there was such lack of suitable food.

**3.** SAME—PROVISIONING OF VESSEL.
Every master, when sailing to or from a foreign port, is bound to see before he sets sail that his vessel is properly provisioned, including a surplus to meet all reasonable contingencies of the seas, and if, in consequence of an omission to do so, there is a short allowance, the withholding of suitable food is not justifiable.

**4.** SAME—CHANGE IN VOYAGE.
If, during a voyage, a master meets with difficulty at sea, it is his duty before changing his voyage for a much longer one, to exercise exactly the same care as when first setting sail, to see that he is properly provisioned for the change of course, and to provision his vessel by any practicable methods the circumstances reasonably admit.

**5.** CRIMINAL LAW—MALICE DEFINED.
Malice consists in one's willful doing of an act, or willful neglect of a known obligation, which he knows is liable to injure another, regardless of the consequences, and a malignant spirit or a specific intention to hurt a particular individual or crew is not an essential element.

**6.** PROTECTION OF SEAMEN—INSUFFICIENT FOOD—NEGLIGENCE.
Under section 5347, the captain is not to be condemned for any mere error of judgment, or for mere negligence, standing alone.

This was an indictment, under Rev. St. § 5347, against Edward W. Reed, master of the American vessel T. F. Oakes, for withholding suitable food and nourishment from members of the crew.

Wallace Macfarlane, U. S. Atty., Jason Hinman, Asst. U. S. Atty., and Max J. Kohler, Asst. U. S. Atty.

Abram J. Rose and David McClure, for defendant.

BROWN, District Judge. Gentlemen of the Jury: Most civilized governments have found it necessary to pass statutes for the protection of seamen. As a class they have been found to be persons who need special statutory protection. They are improvident for the most part and have very little learning. They go hither and thither over the world with little except the statutes and the kindness of their masters, when they do have kind masters, to give them their rights. Universally, the law has made the master a monarch upon the ship. His authority is absolute. That is a necessity of navigation. At times it has been found to lead to such lack of consideration on the part of masters, or of owners, that the seamen suffer in their just right to humane treatment. Therefore statutory enactments have been found necessary to protect them. Our own government has repeatedly passed statutes for this purpose from the time of its organization.

The disease of scurvy was formerly much more prevalent than now. Latterly, as you know by this testimony, it is infrequent. The provisions of our own law were enacted the better to prevent that disease and dreadful scourge upon long voyages. The act (Rev. St. § 4511, and schedule following Rev. St. § 4612), which has been mentioned to you, was passed, I think, first in 1872. It provided specifically for the kinds of food, and a certain variety of food, which should be furnished, and which it was believed, if furnished in sufficient quantities, would be a guaranty against this disorder. The fact that

in later years this disorder has been so infrequent is proof of the wisdom of the provision, and of the good resulting from the observance of the law. Besides this statute there is a much older one (Rev. St. § 5347), the one under which this indictment is framed, which provided in 1835 that if the master, or any other officer of an American vessel, should through malice, hatred or revenge, and without justifiable cause, withhold from the crew suitable food and nourishment or inflict upon them cruel or unusual punishment, he should be subjected to a penalty.

This indictment charges that the defendant did withhold suitable food and nourishment, maliciously and without justifiable cause. You are to determine this case upon the evidence before you, and upon no other considerations. The three main elements which enter into it and which you will be called upon to find, you will observe, are, first, whether there was a lack of suitable food supply; second, if you find that there was, then, whether this was withheld without justifiable cause; and finally, if so, whether this was done from malice, hatred or revenge. There is no evidence here that there was any hatred or revenge on the part of this master towards any individual of the crew, or towards the whole of the crew, and the indictment does not so charge; but the indictment does charge that it was from malice, and that is one of the three necessary ingredients which you must find. In order to convict this defendant you have to find that each of these three elements existed in this case, and beyond a reasonable doubt. If you find beyond a reasonable doubt that there was a lack of proper food, that it was withheld from the crew without justifiable cause, and from malice, then it is your duty to find for the government, and to find the defendant guilty. Nor should you have any hesitation in rendering that verdict, providing you are satisfied beyond a reasonable doubt that these facts are true; not only from a regard to the law itself, but certainly and surely from a regard for that protection to the lives and health of seamen, which the law was designed to secure, and which humanity itself demands.

If there was unreasonable and unjustifiable treatment, a withholding of proper nourishment, without justifiable cause, and if this was done maliciously, by every consideration of humanity and reason, you must say so by your verdict; but you should be satisfied of it beyond a reasonable doubt. That is a question for you to determine, honestly and truly, in view of this evidence.

Now, as regards the lack of proper food, the conclusive evidence upon which the government relies is the result. They say to you that here is a most extraordinary result, a result which cannot be accounted for in any other way; a disorder, a disease, produced by such lack of food and by nothing else; and they say that these four cases which resulted in death, and other cases of sickness of the seamen, were all cases of scurvy. I say four deaths. I do not say all the deaths were from this cause; because it is admitted that the death of the first officer was from some other cause. Now, it is for you to say whether you are satisfied, beyond a reasonable doubt, that there was a most unusual prevalence of scurvy among the seamen upon this ship. There is no medical testimony opposed to that which the

government has introduced from the hospital, that of the persons who received the men and examined them, who saw the disorder of the men, and who say their disorder was scurvy, and who say that the symptoms of the four seamen who died, were the symptoms of that disease also. It is contended that every one of the seamen, every man on the ship who did not eat in the cabin, had scurvy. Those cases that were milder were like the last witness, Reagan, who says that he did not have swelling of the gums; that he had no trouble with the mouth, but that the trouble began with his feet. That is the same way in which the other seamen said their trouble began. His case seems to have been quite light; he procured some asparagus water, and about that time, or soon after, the Kasbeck was hailed and furnished the ship with provisions.

Now, the government relies upon this remarkable fact, that out of a dozen or more seamen, every one who was in the forecastle, and even those two that were aft but not in the cabin, had very marked symptoms of scurvy, or the beginnings of it. If you are satisfied from the evidence that this is true, and there seems to be little to contradict it, you will find that there was some adequate cause; and unless you can find in the evidence some other cause for the prevalance of the disorder, you would naturally attribute it to the cause that has been assigned, and which has been proved to be the ordinary cause of that disorder, namely, the lack of a proper variety of food, and particularly of vegetable food.

If you find that that was the fact, and that here was scurvy produced by a lack of vegetable food, your next inquiry will be whether the vegetable food was withheld without justifiable cause. What is justifiable cause? It might be from some unexpected contingency, or situation that deprives the master, or the owner, or the officer who may be in command, of the power to supply the necessary food. If a vessel sails on her voyage, well provisioned, with all that is required, and by stress of weather she is detained long beyond the usual passage, and there are no ports where any food can be procured, so that the allowance must be shortened in order to enable the vessel to reach a port, it is very plain that the shortening of the allowance is necessary, and the crew are therefore put on what is termed a short allowance, that is, shorter than is prescribed. That is a justifiable cause. Under those circumstances, the necessary food may be lessened, and there is no criminality in that, because it is justifiable.

But every master when sailing to or from a foreign port is bound to see before he sets sail that his vessel is properly provisioned for the intended voyage. By "properly provisioned" is not meant a bare sufficiency for a quick passage. He is bound to make reasonable provision for what is liable to happen upon the seas, though it be unexpected. He is bound to provide for such storms, such delays, such calms as often happen, which may prolong a voyage. Those are among the ordinary contingencies of the sea. The captain is bound to provide a reasonable surplus, a reasonable margin for all known contingencies of the sea; and if he sails without doing so, and in consequence of not having made such provision there is a short allowance, the withholding is not justifiable, because he ought to

have seen that the vessel was supplied with proper provisions. This is a sufficient illustration, I think, to distinguish between what may be called a justifiable cause, and one that is not justifiable.

The third element is that of malice. By "malice" is not necessarily meant in the law a malignant spirit, a malignant intention to produce a particular evil. If a man intentionally does a wrongful act, an act which he knows is likely to injure another, that in law is malice; it is the willful purpose, the willful doing of an act which he knows is liable to injure another, regardless of the consequences. That is malice, although the man may not have had a specific intention to hurt a particular individual, or crew. So, if a man willfully neglects a known obligation, with the same reckless disregard of the consequences, that is malicious conduct in the sense of the law.

Now, your inquiry on that branch of the case will be whether, if you find that there was a lack of food, there was any sufficient cause for it, and whether the master did here deliberately and willfully neglect his duty, knowing what was likely to happen and the probable consequences. What was the duty of the master of this ship in regard to provisions? It was, first, to obey the statute. He was bound, first, to have such articles on board as the statute required and a sufficiency of them for the voyage, or those substitutes which the statute provides. He was bound to provision the ship, as I said before, sufficiently, with a reasonable margin that would satisfy the judgment of any reasonable man who knew the contingencies, or the liabilities of delay, in the course of a long sea voyage.

In the next place, if a master meets with difficulty, with trouble at sea, if he is blown out of his course, as was testified to in this case, it is his duty before changing his route for a very much longer one, to exercise exactly the same care to see that he is properly provisioned for the new voyage, as for the former route; and to provision his vessel by any practical methods that the circumstances reasonably admit. He is not bound to do an unreasonable thing; he is bound to do whatever is reasonable, in view of the evil consequences that may arise by reason of any neglect of duty. He has no right to jeopardize the health or lives of his crew by saying, "I will take the risk of so and so," and not provide properly and reasonably for the voyage.

Therefore I say in regard to the provisioning of this vessel, if soon after the beginning of her voyage from Hong Kong, by reason of storms in the China Sea it became a subject for the master to determine whether he should change his course or not, it was evidently his duty to consider the question of the provisions of the ship, just as much as it was his duty to consider that question at Hong Kong before he left port; and so at future stages of the voyage, it was just as much his obligation to look out for the proper provisioning of the crew and to take such measures as he reasonably could to procure a sufficiency if he found that he was short, or was likely to be short. The master in this case was a man of experience. He cannot plead that he did not know what effect was likely to be produced by a shortness of provisions. The very nature of the duty to supply food for a long voyage, requires a master of any knowledge or experience to make proper provision at the start and at subsequent stages of the voyage, as opportunity arises,

to make reasonable efforts to supply any deficiency which he may find to exist.

Now, that is a question which you must decide wholly. I cannot help you there. It is contended on behalf of the government that when this change was made, the change from the route by way of the Cape of Good Hope to a voyage around Cape Horn, that lengthened the voyage in a very substantial degree. The captain himself said that it was 5,000 miles more. One of the seamen, I think, put it about 7,000 miles more. On running over the map, or the chart, I find by a little computation, in a very rapid estimate, that those figures are probably not far out of the way. You have the means before you in the chart itself, if you choose to examine it, and you can say pretty nearly what the true difference in the distances is. So far as I have been able to estimate, I do not perceive that the captain's estimate is by any means too small. It is a very substantial lengthening of the voyage by taking the route around Cape Horn, whether it was six or seven thousand miles further from Hong Kong. Was that a reasonable thing for him to do? Was he provisioned for a voyage some five or six thousand miles more than he had set out for; and when he passed Honolulu, Buenos Ayres and Rio without seeking food, was that a reasonable thing to do? Now, the question before you is not simply and nakedly whether it was reasonable and proper; but whether, along with the captain's omission to call at any of those places, taking the other circumstances into account, there was in your judgment such willfulness in omitting to call there, as makes it something more than a mere error of judgment, or mere negligence.

I have been requested to charge you, and do charge you, that the captain is not to be condemned for any mere error of judgment. He is not to be condemned either for mere negligence, if it was nothing more than that. He is to be condemned, if you find the other elements to exist, for the additional element of malice in connection with them, in the sense in which I have described it, not as a malignant intention to do a particular harm to anybody, but in the sense of a willful disregard of what he knew to be his duty. That is all. If you find that he willfully disregarded an obligation which he knew and understood, knowing his act was liable to produce injury to the crew, that is malice in the sense of the law. If you find that the circumstances when he turned to go around Cape Horn, were such and were known to him to be such, that he could not go around Cape Horn and reach New York without other provisions, and that he willfully omitted to go back to Hong Kong, or willfully omitted to go into Honolulu, or Buenos Ayres, or Rio, because he preferred to take the consequences of keeping right on till he reached New York, that constitutes malice. It is for you to say upon all these circumstances, upon the condition of the men, upon the applications that the men swore they made to him to be put upon the government allowance, and what you find upon the evidence must have been the condition of the captain,—whether his conduct in these particulars was a deliberate and willful violation and known disregard of the rights of seamen as to provisions for which the statute provides, or whether there was no such willful element in the case, as I have described.

Mr. Rose: I desire to call your honor's attention to the fact that your honor has not charged the requests submitted by us. There are a number of them there.

The Court: Some of them I have declined, yes. I do not think I need to charge all of them. I have already said to the jury that under the law in this court the wife is not a competent witness in such a case as this. I will say to you, gentlemen, that the fact that she does not testify raises no presumption one way or the other; you simply disregard it as wholly out of the case. Of course, you will judge of the captain's conduct not from what appears after the event, but according to the circumstances at the time. I do not see anything else.

Mr. Rose: There is one request with reference to the schedule.

The Court: I am asked to charge you that the captain was not obliged by statute or by law to furnish any vegetable food except peas, rice and barley. Those I believe are the three articles that are mentioned in the statute. They may be substituted for potatoes. I am further asked to charge you that the fact that the captain has no pecuniary interest in decreasing the quantity of food is to be taken in consideration by the jury. That may be taken by you in consideration in your deliberations.

Mr. Rose: I wish to except to that portion of your honor's charge speaking of the scurvy, unless you find other causes for it you will naturally attribute the lack of sufficient food as the cause.

The Court: The stenographer may note what you say.

Mr. Rose: I except to your honor's refusal to charge as requested, a separate exception to each refusal.

The Court: Yes.

Mr. Rose: I think your honor has unintentionally omitted to state that the burden is upon the government, that there is a presumption of innocence on the part of the defendant which has to be overcome, and that the defendant is entitled to every reasonable doubt.

The Court: I stated that at the outset, I believe, two or three times.

Mr. Rose: The list of the provisions on board at the time the vessel left Hong Kong although offered in evidence was not read this morning. I think the jury should take that with them.

### Defendant's Requests to Charge.

Defendant is not chargeable for bad judgment.
    Charged.

If he honestly took the course he did, and believed it to be for the best interest of the ship and her crew to come by the way of the Horn, and to cut down the allowance of food, he cannot be convicted of the charges in the indictment.
    Denied.

If jury find defendant acted without malice.
    Charged.

He is to be judged not by what may appear now to be wrong, but by the situation as it was then presented to him.
    Charged.

There is no proof that when he left Hong Kong he had not sufficient provisions for the usual voyage on which he was bound.
Denied.

He had the right to change from his course, by the way of the Cape of Good Hope, to by the way of the Horn.
Denied.

Malice means intentional wrongdoing, from hatred, revenge or a desire to injure.
Denied.

If defendant deprived the crew of food from good motives, with desire to husband his resources, the verdict must be, not guilty.
Denied.

Malice must be found by the jury on the part of the captain against the whole crew or the verdict must be, not guilty.
Denied.

The first mate is part of the crew.
Denied.

The captain was not obliged by statute or by law to furnish any vegetable food except peas, rice and barley.
Charged.

The fact that the captain has no pecuniary interest in decreasing the quantity of food is to be taken into consideration by the jury.
Charged.

The defendant was acquitted.