## BILLINGS v. BAUSBACK et al.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,123.

1. SEAMEN (§ 10*)—PROVISIONS AND SUPPLIES.

Findings by a District Court that seamen on a voyage were not furnished with food of the kind, quality, or quantity required by Rev. St. § 4612, as amended by Act Dec. 21, 1898, c. 28, § 23, 30 Stat. 762 (U. S. Comp. St. 1901, p. 3120), *held* sustained by the evidence.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 34-38; Dec. Dig. § 10.*]

2. SEAMEN (§ 10*)—PROVISIONS AND SUPPLIES—LIEN FOR FAILURE TO PROVIDE.

Under the provision of Rev. St. § 4612, as amended by Act Dec. 21, 1898, c. 28, § 23, 30 Stat. 762 (U. S. Comp. St. 1901, p. 3120), giving seamen the option of accepting the fare the master may provide, instead of that prescribed in the schedule contained therein, their acceptance of the fare provided, without making formal demand for the statutory scale, is not an election which will debar them from enforcing a lien on the vessel for a failure to provide the same, where they had no opportunity for choice, because the provisions enumerated in the scale were not on the ship, and where they in fact complained of those furnished.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 34-38; Dec. Dig. § 10.*]

3. SEAMEN (§ 10*)—SUIT FOR REDUCTION OF PROVISIONS—ESTOPPEL BY RELEASE—"WAGES."

A release, signed by seamen on their discharge at the end of a voyage, releasing the master and owners "from all claims for 'wages' in respect of the said past voyage or engagement," did not debar them from the right to maintain a suit, under Rev. St. § 4568 (U. S. Comp. St. 1901, p. 3099), to recover for a reduction of allowance, or for the bad quality of the provisions furnished.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 34-38; Dec. Dig. § 10.*

For other definitions, see Words and Phrases, vol. 8, pp. 7369-7373, 7831.]

Appeal from the District Court of the United States for the First Division of the Northern District of California; Robert S. Bean, Judge.

Suit in admiralty by Erwin Bausback and others against the schooner W. H. Talbot, George E. Billings, claimant, to recover compensation for short allowance and bad quality of food furnished libelants as seamen during a voyage. Decree for libelants, and claimant appeals. Affirmed.

Chickering & Gregory and Geo. H. Whipple, all of San Francisco, Cal., for appellant.

F. R. Wall, of San Francisco, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Appeal in admiralty from a final decree of the District Court for the Northern District of California, allowing to appellees certain compensation for reduction of food allow-

ance, and because of the bad quality of food furnished during a voyage made in March and April, 1911, on the sailing ship W. H. Talbot from Newcastle, Australia, to San Francisco, Cal.

The libel was brought by appellees, seamen, who alleged that during the voyage referred to the allowance of the provisions to which each of the seamen was entitled under section 4612 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3120) was reduced in certain specified ways; that from March 14th to April 12th libelants had neither potatoes nor any substitute therefor, nor lard or any substitute therefor; that for 19 days libelants had no beans or any substitute therefor; that for 16 days there was no butter and no substitute; that for 13 days libelants had no sugar and no substitute therefor; that for 17 days libelants had no peas or any substitute therefor; that for 7 days libelants had no molasses and no substitute therefor; that for 7 days they had no onions and no substitute therefor; and that for 74 days they had no biscuits or any substitute. The libel further alleges that the provisions furnished were bad in quality and unfit for use, in that the biscuits which were served during the last fortnight of the voyage contained weevils and maggots, and that during the last 50 days of the voyage the flour with which the bread was made was sour, moldy, and lumpy, so that the bread was unfit for use.

The claimant answered, denying the averments pertaining to any reduction of food to which libelants were entitled under section 4612 of the Revised Statutes, and alleged that libelants accepted the fare of the master provided during the voyage, and that none of them at any time demanded the scale of provisions set forth in section 4612 of the Revised Statutes. It is admitted that the potatoes gave out about 3 weeks before the arrival of the ship at San Francisco; but it is averred that canned peas, canned beans, and canned corn were furnished as substitutes; that, after the canned peas gave out, canned string beans and corn were furnished; that the canned string beans gave out about 7 days before the arrival of the ship, but that libelants were furnished with canned beans or corn every day after the potatoes gave out; that every care was taken to preserve the potatoes, which were of the best quality obtainable, but that many spoiled, and lasted only from 60 to 65 days, while the voyage consumed 84 days. It is admitted that the lard gave out, but alleged that butter was substituted until that gave out, when syrup or molasses or milk was given. It is admitted that the beans gave out 19 days before the voyage was ended, but averred that canned peas and string beans were furnished, and later, when those articles gave out, canned corn and tomatoes were served; admitted that the sugar gave out between March 30th and April 12th, but alleged that syrup or molasses and milk were substituted; admitted that the molasses gave out 5 or 6 days before arrival in San Francisco, but averred that, after the molasses was gone, libelants were served with sweetened milk; admitted that the onions gave out, but alleged that canned peas and string beans were furnished until they, too, gave out, when canned corn and tomatoes were furnished. It is alleged that fresh bread was served at every

meal, and that, in addition to the various articles of food mentioned in the government schedule under section 4612 heretofore referred to, libelants were furnished with soup, canned milk, puddings or pies, oatmeal, ham or bacon, and pancakes. Claimants deny that the biscuits served were bad, or had weevils or maggots, or that the flour used in the bread was sour or bad, and admit that no substitute was provided for the bread that was served, other than the biscuits referred to.

Claimant then sets up that shipping articles were signed by libelants when they shipped; that on April 11, 1911, at San Francisco, when the voyage was ended, the libelants were regularly discharged; and that, upon receiving the amount due for services upon the voyage, each signed a receipt to the effect that, in consideration of settlements made before the shipping commissioner at San Francisco, a release from all claims for wages in respect of the past voyage or engagement was duly made. The shipping articles referred to, after setting forth the provisions of section 4612 of the Revised Statutes of the United States, referring to the scale of provisions to be allowed and served out to the crew during the voyage, quoted the provision in the law that seamen should have the option of accepting the fare the master might provide, but the right at any time to demand the scale provided by statute. It is alleged that during the voyage each of the libelants was supplied with food sufficient for all purposes, both in quality and quantity, and that no demand ever was made of the captain of the vessel or any other person for the allowance of food set forth in said shipping articles or in section 4612 of the Revised Statutes, and that each of the libelants accepted the fare which the master provided without complaint, except in one or two cases, when one of the libelants requested the captain to provide him with some canned meat, which request was complied with.

The case was heard by the District Court, which decided that the potatoes and lard gave out 29 days before the end of the voyage; that the beans gave out 19 days, the butter 16 days, the sugar 13 days, and the peas, molasses, and onions 7 days, before the vessel reached San Francisco. The court was of the opinion that none of the substitutes provided for in the statute was furnished in place of any of these provisions, and that there was nothing aboard the ship which could have been furnished as substitutes. The court held that biscuits were not served until the latter part of the voyage, but that flour and bread were served as substitutes for biscuits; that the bread was of good quality for the first half of the voyage, but that during the latter part it was very poor, because the flour out of which the bread was made had been wet and was molded and lumpy.

[1] We have read the testimony of the several witnesses, and, without quoting what they say, we find that the great weight of the evidence is in accord with the deductions of the District Court. Not only was there an insufficiency of many articles or substitutes called for by the schedule, but the pies, pancakes, and duff that were served to seamen were made from flour that was of bad quality. Several of the witnesses for the claimant admitted that in the latter part of the voyage the bread was not good. Biscuits were not served until

about the last 2 weeks of the voyage, and the cook admitted that the biscuits had some weevils in them, and that, while the bread was edible, it was not very good.

[2] The argument made by the claimant is that a lien will not lie against a ship, through the filing of a libel against her, on the ground that the food supplied was not in accordance with the scale, when the seamen had every opportunity to make known their grievances concerning the food to the captain, and the right to demand of him the government schedule, and when it appears that no demand for the government schedule was ever made. Section 4612, as amended by Act Cong. December 21, 1898, c. 28, § 23, 30 Stat. 762 (U. S. Comp. St. 1901, p. 3120), after providing a regular schedule of provisions and substitutes, contains this language:

" *   *   * The seaman shall have the option of accepting the fare the master may provide, but the right at any time to demand the foregoing scale of provisions. The foregoing scale of provisions shall be inserted in every article of agreement, and shall not be reduced by any contract, except as above, and a copy of the same shall be posted in a conspicuous place in the galley and in the forecastle of each vessel."

The same section (Rev. Stat. U. S. § 4612), in its general provisions giving the form of articles of agreement, provides:

" *   *   * And it is also agreed that, if any member of the crew considers himself to be aggrieved by any breach of the agreement or otherwise, he shall represent the same to the master or officer in charge of the vessel, in a quiet and orderly manner, who shall thereupon take such steps as the case may require.   *   *   * "

The primary right of the seaman is to have provisions as called for by the scale. The law was plainly enacted for the purpose of assuring to the seaman a kind and quality of food well adapted for the preservation of his health, and the requirements of a seaman's life. But he may choose to accept such fare as the master may provide. The duty of the master, therefore, is to provide in accordance with the schedule, unless the seaman elects to accept the fare the master may provide. However, before the seaman can exercise an option as between the fare provided by the master and that included within the scale of provisions fixed by the statute, he must have opportunity of selecting an alternative diet; that is to say, the option can be exercised only where it can be fairly said the seaman has had an opportunity for choice.

Under the evidence in the record, the libelants herein never were offered any choice. Nothing was ever said to them about such a thing. They had no option, nor an opportunity to make effective a formal demand for the government schedule. The articles called for in the government schedule were not on the ship. The master, of course, knew this; hence a formal demand would have availed nothing. The seamen did complain at different times, telling the master that the food was not fit to eat, and that there was not enough food. One of the witnesses testified that the captain knew that he picked weevils out of the pudding which was before them. They told him that there was not enough sugar, that the meat was not good, and that they want-

ed the sugar weighed, if they could not get "full and plenty." The master knew of the justice of these complaints, and while, when made, they were not accompanied with formal demand for the government scale, they were so plain in expressing disgust at the food the master was providing that by every reasonable intendment he should have treated them as demands for the regular scale. Under the circumstances, it would be very unjust to hold that the seamen, by eating such as they could of the food provided by the master, exercised the option to accept it. The real situation simply required libelants to accept what was provided by the master or to go without food.

The suggestion that, if a "demand" for the government schedule had been made, the master might have gone to a port for provisions, and so made it possible to comply with the demand, is not very forceful in this instance; for we may judicially know that a sailing ship, on the last part of a voyage from Newcastle, Australia, to San Francisco, could not well go to port without sailing great distances, thus consuming weeks of time. But, however that may be, inasmuch as no option was ever exercised, and as the master knew that the men were dissatisfied with the food, it was his duty to relieve the situation or stand the legal consequences. The Mary C. Hale Case (D. C.) 132 Fed. 800; Schooner H. E. Thompson v. Martin, 16 App. D. C. 222.

[3] It is contended by the appellant that the District Court erred in finding that the libelants were not barred from recovery by the signing of a release which they made before the United States shipping commissioner. This release, which was executed after the voyage was ended, recited that, in consideration of settlements made before the shipping commissioner, the signers released the master and owners of the vessel "from all claims for wages in respect of the said past voyage or engagement," and that the master also released each of the seamen signing from all claims in consideration of the release signed by them. In effect, the argument of appellant is that this libel is one for additional wages, and that the sums which may be allowed under section 4568 of the Revised Statutes (U. S. Comp. St. 1901, p. 3099) are to be paid as wages. We quote the pertinent parts of the statute:

"If, during a voyage, the allowance of any of the provisions which any seaman is entitled to under section forty-six hundred and twelve of the Revised Statutes is reduced, * * * or if it shall be shown that any of such provisions are, or have been during the voyage, bad in quality or unfit for use, the seamen shall receive, by way of compensation for such reduction or bad quality, according to the time of its continuance, the following sums, to be paid to him in addition to and to be recoverable as wages:

"First. If his allowance is reduced by any quantity not exceeding one-third of the quantity specified by law, a sum not exceeding fifty cents a day.

"Second. If his allowance is reduced by more than one-third of such quantity, a sum not exceeding one dollar a day.

"Third. In respect of bad quality, a sum not exceeding one dollar a day."

The error of appellant's argument is in regarding the release involved as extending beyond wages proper due to those who signed for their services on the voyage. There is no reference whatsoever in the release to claims on account of reduction of allowance of pro-

visions or for ·bad quality of food; and, although claims for ·such compensation to which seamen are entitled are recoverable as wages, still they are not compensation for services on board a vessel, but, as· expressly defined, are allowances by way of compensation to be paid in addition to wages. In providing that such compensation shall be recoverable as wages, the statute has provided a convenient and inexpensive manner, by which a seaman may avail himself of the benefits of the law. No bond is required of a seaman who sues for his wages in an admiralty court, although generally a bond for costs is required before a libel can be filed in such court. It is thus apparent that the purpose of the statute was to enable the seaman to recover compensation for short allowance or bad provisions, by just such a simple process as he employs to recover for services performed during the voyage. It follows that the release under examination, being merely for wages, was only good for the purpose for which it was given, and therefore had no reference to additional allowances for failure to furnish good and sufficient food. Flanders on Shipping, page 70, refers to the act of July 20, 1790, as authorizing recovery for short allowances in the same manner as one of the crew recovers "stipulated wages." The allowance of the compensation in addition to wages imports a penalty, recoverable as a wage, yet not in fact a wage. Petersen et al. v. J. F. Cunningham Co. (D. C.) 77 Fed. 211.

Several cases are cited by appellants; but, as they deal only with wages of seamen and releases for claims for services, they are not directly pertinent. Pettersson et al. v. Empire Transportation Co., 111 Fed. 931, 50 C. C. A. 63, involved claims for wages. So did The Pennsylvania (D. C.) 98 Fed. 744, and The Charles D. Lane (D. C.) 106 Fed. 746, and The George B. Ferguson (D. C.) 140 Fed. 955.

By section 4554 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3091) a shipping commissioner shall hear and decide any question whatsoever between a master, agent, or owner, and any of his crew, which both parties agree in writing to submit to him, and every award so made by him shall be binding on both parties. Inasmuch as it is not contended in this case that there was any agreement in writing to submit to the commissioner any question of compensation in addition to wages, or that the question of allowances was placed before the commissioner by the release given, libelants did not relieve the master and the owners from liability for claims which they may have had under section 4568, heretofore referred to.

As these views dispose of the principal points presented in the briefs of counsel, the decree of the lower court must be affirmed.