### UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION et al. v. GREENWALD.

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

#### No. 158.

1. Seamen ⊂⊃10—Neglect to furnish suitable food is chargeable to owner's agent, as well as owner, and makes both ship and owner liable.

Neglect to furnish seaman with suitable food and nourishment is directly chargeable to the agents of the owner, as well as the owner, and negligence with respect thereto makes ship and owner liable for consequent damages.

2. Limitation of actions ⊂⊃127(6)—In action for seaman's death from lack of care during illness, amended complaint, alleging illness resulted from lack of proper food, held not new cause of action, then barred.

In action to recover for death of seaman, where original complaint alleged failure to furnish proper medical care and attention after deceased became sick, and that his illness was not caused by any want of care on his part, but solely by reason of negligence of defendants, filing amended complaint, alleging that illness of deceased was caused by negligent failure to furnish him with proper and suitable food *held* not the statement of a new cause of action, then barred.

3. Appeal and error ⊂⊃195—In action for seaman's death, where defendants did not object to evidence in support of amended complaint, they could not thereafter complain that amended complaint stated new cause of action, then barred.

In action for death of seaman from failure to provide proper medical care after seaman became ill, where defendants made no objection to the admission of testimony in support of amended complaint, alleging that illness was caused by improper food, they could not, on

review of case, complain that filing of amended complaint was statement of a new cause of action, then barred and improperly permitted.

**4. Seamen ⟨key⟩3—Statute of District of Columbia held applicable to action against Emergency Fleet Corporation for death of seaman in Africa (Act March 3, 1901, §§ 1301–1303 [31 Stat. 1394, 1395]).**

In action against United States Shipping Board Emergency Fleet Corporation as owner of ship, and another as operator, for death of seaman, who died at Accra, Gold Coast, Africa; the trial court properly held that death statute the District of Columbia (Act March 3, 1901, §§ 1301–1303 [31 Stat. 1394, 1395]), where Fleet Corporation was domiciled, controlled.

**5. Death ⟨key⟩11—In absence of statute, there can be no recovery for tortious personal injury causing death.**

A cause of action for tortious personal injury, causing death, does not survive the death, and hence there can be no recovery, in the absence of statutory liability.

**6. Courts ⟨key⟩9—No recovery can be had on statutory liability, unless it arises within territorial sovereignty of state whose statute is relied on.**

Statutes have no extraterritorial operation, and hence no recovery can be had on statutory liability, unless liability arose within territorial sovereignty of the state whose statute authorizes recovery.

**7. Courts ⟨key⟩8—Right of action on statutory liability may be pursued in any court having jurisdiction of subject-matter and parties.**

Where statute law of a state grants a right of action, and legal liability thereunder is incurred, the right of action may be pursued in any court having competent jurisdiction over the subject-matter and the parties.

**8. Admiralty ⟨key⟩4—Jurisdiction and laws of nation to which ship belongs accompany it wherever it may be water-borne.**

Jurisdiction and laws of the nation to which ship belongs accompany the ship, not only over the high seas, but also in the ports and harbors, and everywhere else it may be water-borne.

**9. Seamen ⟨key⟩3—In action against Emergency Fleet Corporation and operator of ship for death of seaman, District of Columbia death statute held properly applied against operator as owner pro hac vice (Act March 3, 1901, §§ 1301–1303 [31 Stat. 1394, 1395]).**

In action against United States Shipping Board Emergency Fleet Corporation, domiciled in District of Columbia, as owner, and another as operator, of steamship, for death of seaman, who died at Accra, Gold Coast, Africa, death statute of District of Columbia (Act March 3, 1901, §§ 1301–1303 [31 Stat. 1394, 1395]), held properly applied against the defendant operator, as well as the Fleet Corporation; the operator being deemed an owner pro hac vice.

**10. Admiralty ⟨key⟩32—Ownership pro hac vice of operator does not change situs of ship.**

Ownership pro hac vice of operator of ship does not change the situs of the ship, as determined by the domicile of the owner.

In Error to the District Court of the United States for the Southern District of New York.

Action by Esther Greenwald, administratrix, etc., against the United States Shipping Board Emergency Fleet Corporation and another, for the death of her intestate. Judgment for plaintiff, and defendants bring error. Affirmed.

Emory R. Buckner, U. S. Atty., and Irving L. Evans, both of New York City (Joseph M. Dreyer, of New York City, of counsel), for plaintiffs in error.

Silas B. Axtell, of New York City (Charles A. Ellis, of New York City, of counsel), for defendant in error.

Before MANTON and HAND, Circuit Judges, and CAMPBELL, District Judge.

MANTON, Circuit Judge. The intestate was a seaman on board the steamship Ogontz, and died at Accra, Gold Coast, Africa, a dependency of the United Kingdom of Great Britain, on the 12th of February, 1919. The allegations of the complaint and the proof tended to show that, while so on board the vessel on the high seas, he became ill from food supplied to him for sustenance; the claim being that the food was "bad, decayed, and rotten." The vessel was owned by the United States Shipping Board Emergency Fleet Corporation, and it was managed and operated by A. H. Bull & Co. The contract showing the relations between the Shipping Board and Bull & Co. named the latter as operator and provides that the Shipping Board shall equip and supply the vessel and pay for all the provisions, and wages and provide other necessary stores. The operator is also referred to as the manager, and it is obliged to exercise due care and diligence in the management of the vessel. The court below submitted the issue of fact, as to neglect in furnishing food, to the jury and held that the right of action for loss of life depended upon the statute of the District of Columbia for the reason that the vessel was under the registry of the corporation organized in and a resident of that district.

[1] The illness of the deceased, as stated in the hospital certificate, was enteritis. There is evidence in the record sufficient to show that food poisoning would cause enteritis, and there was sufficient to require the trial judge to submit the question of the wholesomeness and quality of the food to the jury for their consideration. A contractual duty as well as the natural duty required the shipowner and operator to supply wholesome

food to seamen. Billings v. Bausback (C. C. A.) 200 F. 523; United States v. Reed (C. C.) 86 F. 308. It is a criminal offense for an officer or master of a vessel to withhold from seamen suitable food and nourishment. Section 291 of the United States Criminal Code (Comp. Stat. § 10464). This neglect if it exists, is directly chargeable to the agents of the owner as well as the owner, and negligence with respect thereto makes the ship and owner liable for consequent damages. The Iroquois, 194 U. S. 242, 24 S. Ct. 640, 48 L. Ed. 955; The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760; The A. Heaton (C. C.) 43 F. 592.

[2] But it is argued that error was committed below in permitting the defendant in error to amend her complaint and set forth allegations of negligence and failure to furnish the deceased with proper and good food during the voyage. The original complaint alleged the failure to obtain proper medical care and attention after the deceased became sick, and that his illness was greatly aggravated by reason of the negligence of the master and seamen, and "that said illness and death of the deceased were not caused by any negligence or want of care on his part, but wholly and solely by reason of the negligence of the defendants, the master and seamen in their service having command." The amended complaint alleged that the illness and death of the deceased was not caused by any negligence or want of care on his part, but "by reason of the negligence of the defendants, the master and seamen in service having command, particularly in failing to furnish plaintiff with proper and good food during the voyage, and by furnishing bad, improper, decayed, and rotten food, which the plaintiff's intestate was forced to eat or starve."

[3] It is claimed that this amendment sets forth a new and different cause of action than that alleged in the original complaint and that such action is barred by the statute of limitations. The majority of this court are of the opinion that the allegations of the amended complaint are but an amplification of the allegations of the original complaint and do not set forth a new cause of action. Seaboard Air Line v. Koennecke, 239 U. S. 352, 36 S. Ct. 126, 60 L. Ed. 324; N. Y. C. & H. R. R. Co. v. Kinney, 260 U. S. 340, 43 S. Ct. 122, 67 L. Ed. 294; Missouri K. & T. R. Co. v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134. Where a defendant had notice from the beginning that the plaintiff sets forth and is trying to enforce a claim against it because of conduct resulting in the illness and death of her intestate, the reasons for the statute of limitations do not exist, and the amplified pleading does not change the cause of action, although the original pleading may have been very general. The allegations of the amended complaint relate back to the inception of the action, and if that be served and filed within the limitation period of the statute, it is sufficient. But there was no objection or exception to the admission of testimony throughout the trial as to the improper food served, and the plaintiffs in error may not now be heard to complain.

[4] The amended pleading set forth a cause of action for loss of life under Lord Campbell's Act, the New York Decedent Estate Law (Consol. Laws, c. 13), the death statute of Pennsylvania, and the death statute of the District of Columbia. The trial judge submitted the case to the jury under the statute of the District of Columbia. He held that the flag of the ship was the lex loci delicti, and further that both defendants were the owners pro hac vice.

[5-7] The argument of the plaintiffs in error is that the deceased, having died at the Gold Coast, Africa, the right of action for loss of his life is dependent upon the right of recovery of the law of that land. But this merchant ship on the high seas is of the country of the flag she flies, and the law of the flag applies to the right of action which arose on the high seas. The Hamilton, 207 U. S. 398, 28 S. Ct. 133, 52 L. Ed. 264; International Nav. Co. v. Lindstrom (C. C. A.) 123 F. 475. Inasmuch as the cause of action for a tortious personal injury does not survive the death, there may be no recovery in the absence of statutory liability. Statutes have no extraterritorial operation, and there can be no recovery unless the statutory liability arose within the territorial sovereignty of the state whose statutes authorize recovery. When the statute law of a state grants a right of action and legal liability is incurred, the right of action may be pursued in any court having competent jurisdiction over the subject-matter and the parties.

In Dennick v. Railroad, 103 U. S. 11, 26 L. Ed. 439, the federal court sitting in New York permitted a suit by an administrator of a deceased person, who died in New Jersey from injuries received in that state by the negligence of a defendant, because the statute of New Jersey allowed a recovery to the administrator upon the cause of action and the Supreme Court affirmed the result. Since this steamship belonged to a citizen of the District of Columbia, it was a vessel of

that District. The Harrisburg, 119 U. S. 214, 7 S. Ct. 140, 30 L. Ed. 358. The statute of that District may be enforced as the law of the flag of the vessel. This may be said to be supplemental of the general maritime law and is controlling upon the vessel to the same extent territorially as is the general maritime law.

In Van Doren v. Penna. R. Co. (3d Circuit) 93 F. 260, the tort committed resulting in death was committed in one state and death followed in another. The court there held that the cause of action arose from the injury resulting in death; that the death did not constitute a tort. The court said:

"The fact of death is not the tort, but its consequence. * * * In the absence of any statutory provision confining the action to cases where both the injury and resulting death occur within the state, it is immaterial in an action under the statute of the state in which the injury was received, whether death occurred within or without its limits. In either case death results from the tort committed within the state and the loss to surviving relatives is the same."

In Luckenbach S. S. Co. v. Campbell (9th Circuit) 8 F.(2d) 223, the injury occurred on board ship and the death as a result of the injury occurred on shore. The suit was under section 33 of the Jones Act (Comp. St. § 8337a), which in a case of death resulting from a tort gives the personal representative of the deceased a right to maintain an action. It was there held that the coincidence of the seaman's death on land did not affect the right of relief accorded to his personal representative.

[8] The statute of the District of Columbia says: "Whenever by an injury done or happening within the limits of the District of Columbia the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, * * * " suit may be maintained and the recovery is limited to $10,000. 31 Stat. 1394, c. 854, §§ 1301, 1302, 1303. Jurisdiction and the laws of the nation accompany the ship, not only over the high seas, but also in the ports and harbors, and everywhere else they may be water-borne. United States v. Rodgers, 150 U. S. 249, 14 S. Ct. 109, 37 L. Ed. 1071. This ship was within the district as contemplated by the statute when on the high seas, since she was a vessel of the District of Columbia, resident and registry. This seaman was under the protection of that flag, and his administratrix is entitled to the benefits of that statute. Thompson Towing Co. v. McGregor (C. C. A.) 207 F. 209; Wenzler

v. Robin Line (D. C.) 277 F. 812; The Hanna Nielson (C. C. A.) 273 F. 171.

[9, 10] Nor was error committed in applying the statute of the District of Columbia as against plaintiff in error Bull & Co. It operated the vessel as managing agent for the Shipping Board; the Shipping Board took over complete control from the United States to manage and operate them for its own independent account. Under the contract between the Shipping Board and Bull & Co., the former retained a check on officers and crew personnel. Bull & Co. managed and operated the vessel on a "cost plus" plan and received a percentage of the profits. It is conceded in the record that the decedent was employed by the Shipping Board and under these circumstances Bull & Co. are deemed owners pro hac vice with all liabilities ordinarily attaching against a true owner. Sloan Shipyards v. U. S. Shipping Board, etc., 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762; Everett v. United States (D. C.) 277 F. 256; Stewart v. U. S. Shipping Board, etc. (D. C.) 7 F.(2d) 676. Ownership of this character does not change the situs of the ship. That was in the District of Columbia. The liability for death due to a tortious act was measured by the right of recovery of that district. This rule of law was correctly applied below. The Hamilton, 207 U. S. 398, 28 S. Ct. 133, 52 L. Ed. 264.

Judgment affirmed, with costs.