Dimitrios **GARIS**, Libellant,

v.

**COMPANIA MARITIMA SAN BASILIO
S. A.**, Respondent.

No. 66 Ad. 35.

United States District Court
S. D. New York.

Aug. 23, 1966.

Abraham E. Freedman, New York City, for libellant; Charles Sovel, New York City, of counsel.

Dougherty, Ryan, Mahoney & Pellegrino, New York City, for respondent; Lawrence J. Mahoney, New York City, of counsel.

OPINION

McLEAN, District Judge.

This is a suit in admiralty by a Greek seaman for damages for personal injuries which he sustained on September 15, 1965 on board the S.S. Eurytan, a vessel owned by respondent, which is of Greek registry and flies the Greek flag.[1] When the accident occurred, the Eurytan was on the high seas, en route to Australia. Respondent asks this court to decline to exercise jurisdiction over the suit.

The affidavits, which have been supplemented by interrogatories and a deposition, developed the following additional facts. On May 26, 1965, at Piraeus, Greece, libellant, a Greek citizen and resident, signed a "work contract" to serve as a fireman aboard the Eurytan. This document contained the following "Special Terms":

"a) Injuries and sickness will be governed according to the Greek Law and the Greek Collective Agreement.

b) Every claim or dispute because of injury or sickness will be under the exclusive jurisdiction of the Greek Courts."

Libellant joined the vessel at Rotterdam on May 27, 1965 and signed the ship's articles there. The articles were "renewed," which apparently means "rewritten," when the ship reached New York on June 10, 1965. They provide that the terms of the Greek collective bargaining agreement shall apply to libellant's employment. Chapter XVII of this agreement states that claims arising out of accidents are to be "judged exclusively by the competent Greek Au-

---

1. The libel also claims maintenance and cure and wages for the period of libellant's disability.

thorities and Greek Law Courts, resort to any foreign Courts and to any foreign Law being prohibited and expressly ruled out."

After the accident, libellant was transferred at sea to a vessel bound for California so that he might receive better medical care. He was hospitalized for a time at San Pedro, California. On February 3, 1966, he was sent back to Greece, where he still is undergoing treatment.

Respondent is a Panamanian corporation with its principal office in Greece. All its officers, directors and stockholders are citizens and residents of Greece. It owns seven ships, all of Greek registry, which it operates as tramps all over the world. They touch at American ports frequently, but, according to respondent, not on any regular schedule. Libellant claims, without express contradiction from respondent, that during the past three years, none of these vessels has been to Greece. However, the testimony is that the crews are hired in Greece. The crew list of the Eurytan shows that with very few exceptions, the members of the crew are Greeks.

Respondent calls its vessels the Marchessini Line. A company named P. D. Marchessini & Co. Ltd., whose office is in London, has a contract with respondent by which P. D. Marchessini & Co. Ltd. is designated respondent's agent. The contract, after reciting that respondent "desires to give the exclusive management and operation of its vessels to the Agent," provides that "the Agent shall have the exclusive representation throughout the world for all vessels of the Owner * * *" and shall have power to appoint subagents in various countries. In the exercise of this power, P. D. Marchessini & Co. Ltd., by contract dated June 30, 1960, appointed P. D. Marchessini & Co. (New York) Inc. agent for respondent's vessels in the United States. P. D. Marchessini & Co. (New York) Inc. is a New York corporation.

Its stock is owned by two sons of P. D. Marchessini, the founder of the British company.[2]

P. D. Marchessini does not reside in the United States, although he visits this country "occasionally." His son, Alexander Marchessini, president of the New York corporation, was born in Greece but is a naturalized American citizen and resides in New York. It does not appear whether the same is true of the other son.

Alexander Marchessini testified that P. D. Marchessini & Co. (New York) Inc. acts as agents for respondent's vessels in New York and occasionally, through subagents, in other American ports. Its duties include arranging for pilots, tugs and stevedores. On the instructions of P. D. Marchessini & Co. Ltd., it books cargo and places advertisements for the vessels in New York newspapers.

Mr. Marchessini testified that "wherever we are instructed by our principals to do something in connection with their vessels in the United States, and it is within our power to do so, we do so." It keeps copies of the crew lists of respondent's vessels which are required by the immigration authorities. Occasionally, it handles repairs to the vessels, but it is not generally responsible for maintenance of the vessels and it does not on its own initiative determine the vessels' cargoes or their routes.

P. D. Marchessini (New York) Inc. owns no stock of P. D. Marchessini & Co. Ltd. or of respondent. Neither does Alexander Marchessini, and apparently his brother owns none either. Neither Alexander nor his brother are officers or directors of P. D. Marchessini & Co. Ltd. or of respondent.

Although respondent borrowed money from Chase Manhattan Bank, secured by a first fleet mortgage on all its vessels, respondent states, in answer to libellant's interrogatories, that "there is no Ameri-

2. There is also a company known as P. D. Marchessini & Co. (Hellas) Ltd., which shares offices with respondent in Greece. Its activities, if any, have not been explained. Panaghi Marchessini is one of the three officers, directors and stockholders of respondent.

can financial interest in the SS 'EURYTAN', and no United States individuals or corporations or partnerships have in any way contributed money toward the building, maintenance or development of the SS 'EURYTAN'."

If this action were to be tried in this court, it seems clear that Greek law would apply, not only because the parties agreed that it would, but also because a weighing of the factors listed in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) leads to the same conclusion. Moreover, most, if not all, of the witnesses to the accident would be Greeks, presumably speaking English imperfectly, if at all. None of the witnesses resides in New York. If respondent's witnesses are still in its employ, it would seem that it could produce them at a trial in Greece as readily as in New York. If they are not, presumably such witnesses, being Greek citizens, would be more easily available in Greece than in New York. Libellant is in Greece. Libellant's present doctors are in Greece.

The general principle laid down by the Court of Appeals in Conte v. Flota Mercante Del Estado, 277 F.2d 664 (2d Cir. 1960) is applicable here. The court there said (p. 667):

"It is *prima facie* undesirable that an overburdened District Court should conduct a trial in a personal injury action between foreigners, with all the evidence on the issue of liability and much of the evidence on damages given in a foreign tongue by witnesses equally or more available in the foreign forum, and with reliance having to be placed on expert testimony as to the governing law, when, as here, an adequate remedy is available in the country where both parties reside and to which the plaintiff will return."

Libellant claims that respondent is owned and controlled by American citizens and that the Greek flag, in effect, is a mere flag of convenience. The evidence does not bear out this claim. The usual complexities, which are illustrated here, of corporate organization of Greek shipping interests, with one corporation owning the vessels and another operating them, do not affect the result in this case, for here, in any event, these interests are foreign interests, based either in Greece or in England, not in the United States. I cannot disregard the testimony that the Marchessini sons in New York, through P. D. Marchessini (New York) Inc., act merely as local agents, subject to control from abroad. The facts that on one occasion respondent borrowed money from a New York bank, and that on another occasion a Rotterdam shipping agent addressed its report to P. D. Marchessini & Co. Inc. in New York, rather than to P. D. Marchessini & Co. Ltd. in London, do not outweigh this testimony or justify a finding that these vessels are in actuality controlled from New York.

Taking everything into account, there are not enough relevant "contacts" with the United States to justify retaining jurisdiction of this controversy between aliens which could more conveniently be tried in Greece. Anastasiadis v. S.S. Little John, 346 F.2d 281 (5th Cir. 1965); Brillis v. Chandris (U.S.A.) Inc., 215 F.Supp. 520 (S.D.N.Y.1963); Hatzoglou v. Asturias Shipping Company, S.A., 193 F.Supp. 195 (S.D.N.Y.1961); Vavatsikos v. Goulandris Brothers, Ltd., 208 F.Supp. 425 (E.D.La.1962). Accordingly, in the exercise of the court's discretion, the court declines to take jurisdiction over this action, and the action is dismissed, without prejudice to the institution by libellant of a new action on this claim in Greece.

Mention should be made of certain provisions to be inserted in the order. Respondent has indicated its willingness to appear in any action to be brought by libellant in Greece. Such an undertaking by respondent is a condition of this dismissal and shall be provided for in the order, which shall also set an appropriate time limit for the institution by libellant of a new action in Greece.

Respondent also states that it is willing to post a bond "to assure its appearance" in a Greek action. It is not clear

whether respondent consents that this bond shall also secure any judgment which libellant may obtain in that action. Such a bond was required in *Brillis* and *Hatzoglou.*

Libellant should not be prejudiced by this dismissal in securing hospital records from San Pedro, California, which he may need to prove his case in Greece. The dismissal is also conditioned upon appropriate provision for obtaining those records.

If the parties are unable to agree upon the terms of the order, I will hear further argument on that subject at the time of settlement of the order.

Settle order on notice.