**Calliopi P. XERAKIS, Administratrix of the Estate of Petros Xerakis,**

v.

**GREEK LINE, INC., and Transoceanic Navigation Corp.**

**Civ. A. No. 73–1257.**

United States District Court, E. D. Pennsylvania.

Sept. 10, 1974.

John Dorfman of Pechner, Sacks, Dorfman, Rosen & Richardson, Philadelphia, Pa., for plaintiff.

Thomas Lane Anderson of Rawle & Henderson, Philadelphia, Pa., for defendants.

### MEMORANDUM ORDER

HIGGINBOTHAM, District Judge.

On June 14, 1971, Peter Xerakis, a citizen of Greece, was a forty-three-year-old merchant seaman aboard the Greek flag ship, SS "Queen Anna Maria," from which he jumped into the Hudson River and drowned as the vessel was departing from the port of New York. He left surviving him a widow and two minor children in Greece. On March 30, 1973, in her native land, Greece, plaintiff commenced an action in the Court of First Instance of Piraeus, Greece, seeking indemnity in damages from Transoceanic Navigation Corporation for the death of the decedent. Plaintiff similarly seeks compensation before this court relying on the Jones Act, 46 U.S.C. § 688 (1970). Defendants have filed a motion to dismiss for *forum non conveniens*. After careful consideration of the briefs and undisputed facts of record, I conclude that on the facts of record defendants are entitled to dismissal under the doctrine of *forum non conveniens*.

### I

### The Jones Act Issue

Even the leading case relied on by plaintiff, Bartholomew v. Universe Tankships, Inc., 263 F.2d 437, 440 (2nd Cir. 1959), instructs us ". . . that the Congress intended the Jones Act to be given a construction in consonance with *international* maritime law. This meant that not every contact, no matter how emphemeral or fortuitous it might be, would be deemed a basis for applying American law, that is to say the Jones Act" (emphasis added). The court further stated ". . . that in a particular case something between minimal and preponderant contacts is necessary if the Jones Act is to be applied. Thus we conclude that the test is that '*substantial*' contacts are necessary. And

while . . . one contact such as the fact that the vessel flies the American flag may alone be sufficient, this is no more than to say that in such a case the contact is so obviously substantial as to render unnecessary a further probing into the facts." 263 F.2d at 440–441 (emphasis added). Thus the issue is: were the contacts here "something between minimal and preponderant contacts" to thereby trigger the applicability of the Jones Act? I find that plaintiff has not met that burden of proof of establishing more than minimum contacts. The following facts are sufficient to indicate to me that under *Bartholomew, supra,* and its progency, the Jones Act is not applicable:

1. Plaintiff is a citizen and resident of Greece, where she now resides.

2. Defendant, Transoceanic Navigation Corporation, owner of the SS "Queen Anna Maria," is a corporation organized and existing under the laws of Liberia and said corporation is neither owned nor controlled by United States citizens.

3. None of the stock of Transoceanic Navigation Corporation was owned by a United States citizen; it was all in the form of various shares in the control of and voted by Greek nationals.

4. The SS "Queen Anna Maria" as a vessel is engaged in carrying passengers and is registered under the laws of Greece, with its home port Andros.

5. Decedent, a Greek citizen, joined the crew of said vessel as electrician in Piraeus, Greece on May 1, 1971, and agreed that any claim arising out of his employment would be settled according to Greek law.

6. The vessel was departing from New York harbor to Piraeus when decedent apparently committed suicide.

But for the fact that the vessel had landed in New York and the alleged suicide was committed while the vessel was departing from New York, any claim of sufficient contact would be most specious. But while not a totally specious argument, nevertheless the mere death

in New York harbor on the facts of this case does not as a matter of law create the substantiality necessary in *Bartholomew* to make the Jones Act applicable. This case is quite dissimilar to Uravic v. F. Jarka Co., 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312 (1931), or Gambera v. Bergoty, 132 F.2d 414 (2d Cir. 1942), cert. denied, 319 U.S. 742, 63 S.Ct. 1030, 87 L.Ed. 1699 (1943), where there was American citizenship or domicile of the plaintiff seaman employed on the foreign-flag ship. Similarly, this case is quite distinguishable from *Bartholomew, supra,* where though the vessel was owned by a Liberian corporation and it was flying the flag of Liberia, all of the stock of the Liberian corporation was held by a Panamanian corporation and *in turn all of the stock of the Panamanian corporation was owned by citizens of the United States,* all officers of the Liberian corporation were American citizens and the Liberian corporation's principal place of business was in New York City, articles for voyage were signed by the seamen in Baltimore and the plaintiff had lived in Brooklyn since first signing on as a seaman on one of the Liberian corporation's vessels.

## II

### *Forum Non Conveniens*

■ Since there is no basis for a Jones Act claim, the remaining issue is whether the case should be dismissed on *forum non conveniens* grounds. There is no request to transfer this case to another forum within the United States Court system pursuant to 28 U.S.C. § 1404(a) (1970). Here we have a classic application of the *forum non conveniens* doctrine as it was developed prior to the amendment of the Judicial Code to include § 1404(a). Thus, the classic test, as articulated by Mr. Justice Jackson twenty seven years ago in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L.Ed. 1055 (1947) is patently applicable here.

If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. 330 U.S. at 508, 67 S.Ct. at 843 (footnote omitted).

In addition to the factors previously cited as decisive for the non-applicability of the Jones Act the following are also relevant under the *Gulf Oil Corporation* test, *supra*:

All the witnesses to the circumstances of plaintiff's decedent's "suicide" and his prior service aboard the vessel are Greek nationals who reside in Greece and speak the Greek language and, as noted before, plaintiff is a citizen and resident of Greece where she now resides. Plaintiff's decedent, a citizen of Greece, contracted to join the vessel in Greece. Defendant Transoceanic Navigation Corporation agrees to continue to appear and defend an identical action previously brought by plaintiff in the appropriate Greek court.

At oral argument plaintiff's counsel vigorously argued that the Greek law is inequitable, harsh, and unfair to seamen, in contrast to the more liberal benefits provided under the Jones Act. However, we live in an international community and by definition from the view of certain interests the laws of some other countries may be more or less favorable to that special interest. But we are not a super-court of international jurisdiction; and there is nothing in the record to suggest that a federal court in the United States can more wisely interpret Greek law than the Greek lawyers and jurists themselves—who would have to be called upon to define their law in any adjudication before us.

Despite the assertions of plaintiff's counsel, I do not conclude that she cannot get a fair trial in her own native land. It is not this court's responsibility that the Greek law is purportedly less liberal than the United States maritime law in the rights and benefits provided seamen. To try this case here under Greek law invades the prohibited area of which Justice Jackson spoke that "the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." 330 U.S. at 508, 67 S.Ct. at 843. As to plaintiff's claim against Greek Lines, Inc., the record indicates that it did nothing other than act as owner's agent in connection with that part of its business which deals with the United States —arranging for advertising, booking passengers, forwarding mortgage payments to the United States mortgagee, and the like. That contact is not sufficient for application of the United States law and there is nothing which it did to establish the type of substantial contacts necessary to preclude the applicability of a *forum non conveniens* dismissal.

Plaintiff's suit must therefore be dismissed on the grounds of *forum non conveniens*.