In re Complaint of **LIDORIKI MARITIME CORPORATION**, owner of the TANK VESSEL ELIAS, Eletson Maritime Corporation, alleged owner of the TANK VESSEL ELIAS, and Gregory B. Hadjieleftheriadis, alleged owner of the TANK VESSEL ELIAS, for exoneration from and limitation of liability.

Civ. A. No. 74–2551.

United States District Court,
E. D. Pennsylvania.

Dec. 10, 1975.

John T. Biezup, Robert B. White, Jr., Philadelphia, Pa., for plaintiffs.

Marvin I. Barish, Sidney J. Smolinsky, Philadelphia, Pa., for personal injury claimants.

## OPINION

HIGGINBOTHAM, District Judge.

On April 9, 1974 the tank vessel ELIAS was involved in a series of explosions and fires at the Arco Refinery, Fort Mifflin, Pennsylvania on the Delaware River. As a result of the ex-

plosions and fires aboard the ELIAS, 42 suits were filed, all of which have been consolidated with the undersigned as related cases. Thirty six suits have been filed in behalf of the surviving crew members or the representatives of those who were killed in this tragic accident.[1]

## I. STATEMENT OF FACTS

In response to the suits filed by the crew members or their representatives, the owner and two alleged owners of the ELIAS have filed a "Motion in Support of Application of Greek Law to Crew Members' Claims and/or Dismissal of Crew Members' Claims on the Basis of Forum Non Conveniens." In substance, the shipowners are alleging that the crew members and their survivors do not have a cause of action either under the Jones Act, 46 U.S.C. § 688, or the general maritime law of the United States. To the extent that the crew members are filing a direct claim against the shipowner under either the Jones Act or the general maritime law of the United States, I find that the shipowner's motion for dismissal should be granted on grounds of *forum non conveniens.*

The motion of the shipowner has been responded to by counsel for the crew members or their survivors with most artful pleadings. Thus many alleged facts, while not being specifically denied, are left in limbo by counsel who purportedly do not have adequate knowledge concerning the truth of the allegations. (See responses of litigants represented by Freedman, Borowsky and Lorry to paragraphs 12–15, 17, 19–33, and by Pechner, Sacks, Dorfman, Rosen & Richardson to paragraphs 15, 17, 19–31.) The shipowners filed an affidavit by counsel verifying the accuracy of the allegations upon which the motions for dismissal were filed.

Upon reviewing the pleadings at this stage, I find that the ELIAS was a Greek tank vessel, it flew a Greek flag and its home port was in Piraeus, Greece. None of the crew members of the ELIAS were American citizens. The crew consisted of 22 Greeks, 4 Turks, 2 Cypriots, 2 Ethiopians, 2 Indians, 1 Egyptian, and 1 Brazilian. All of the officers of the ELIAS were Greek nationals, including the captain, chief mate, second mate and third mate. Prior to joining the ELIAS, all of the crew members signed contracts of employment in Piraeus, Greece. These contracts provided that the Greek courts should have exclusive jurisdiction over any dispute arising from the crew members' employment aboard the ELIAS.

Most crew members of the ELIAS were members of the Panhellenic Seamen's Federation, which had a collective bargaining agreement with the owner of the ELIAS.[2] This agreement contained the following provision:

[Chapter XVIII] Individual contracts of employment, on which the present Collective Agreement applies, shall be governed exclusively, as to any claim or right arising out of the seafarer's employment, including claims on account of illness or accident, by the provisions of the present Collective Agreement and Greek Law, and judged exclusively by the competent Greek Authorities and Greek Law Courts, resort to any foreign Courts and to any foreign Law being prohibited and expressly ruled out.

The above findings seem to be undisputable and those facts alone would probably warrant the dismissal on *forum non conveniens* grounds. However, there is a plethora of additional facts which tip the scales further in favor of dismissal. These following facts have been supported by an af-

---

1. While I am aware of the maritime protocol which distinguishes officers from crew members, in this case I am treating both under the label of crew members.

2. While the crew members' counsel do not concede that the crew members were members of the Federation, I find that most, if not all, were members of such Federation.

fidavit of counsel for the shipowner and while the counsel for the crew members have not admitted these facts, they have presented no evidence controverting them.[3]

The ELIAS was owned by plaintiff Lidoriki Maritime Corporation, a Panamanian corporation having its principal place of business in Piraeus, Greece. The ELIAS was the only vessel owned by Lidoriki Maritime Corporation, the directors of the corporation reside in Greece and there is no ownership or interest in Lidoriki Maritime Corporation by U.S. citizens or residents. It has also been alleged that Eletson Maritime Corporation was the owner of the ELIAS. I find that Eletson Maritime Corporation was not an owner of the vessel and at most was at all times material hereto an agent for the owner of the ELIAS. The directors of Eletson Maritime Corporation are: Evangelos V. Korialos, John E. Karastomatis, Gregory B. Hadjieleftheriadis, Erric B. Kertsikoff, and A. B. Hadjieleftheriadis, all of 1 Makras Stoas, Piraeus, Greece.

There is no ownership of interest in Eleston Maritime Corporation by United States citizens or residents. It has also been alleged that plaintiff Gregory B. Hadjieleftheriadis is one of the owners of the tank vessel ELIAS. There is no evidence of record to indicate that he was in fact the owner of the ELIAS. At all times material to this action, he was an individual citizen of Greece, residing in Greece.

## II. ANALYSIS

The instant case is one of several wherein seamen on foreign flagships who, having signed agreements providing for their cases to be tried by the laws of another country, would prefer to have their claim adjudicated by a federal court applying either the Jones Act or the general maritime law of the United States. The courts have been unanimous in holding that a foreign seaman does not have a cause of action against a foreign shipowner under either the Jones Act or the general maritime law of the United States, in factual situations similar to the present. See *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Romero v. International Terminal Operating Company*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). In his authoritative opinion in *Lauritzen*, Mr. Justice Jackson listed seven factors for consideration in determining the law governing crewmen injured:

1. Place of the wrongful act
2. Law of the flag
3. Allegiance or domicile of the injured
4. Allegiance of the defendant ship owner
5. Place of contract
6. Inaccessibility of foreign forum
7. The law of the forum

This list has sometimes been referred to as the "seven immortal pillars," *Rhoditis v. Hellenic Lines, Limited*, 412 F.2d 919, 922 (5th Cir. 1969). Although the test set out by these factors "is not a mechanical one," *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 308, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970), it nevertheless provides the framework within which to determine the applicable body of law.[4] The only

---

3. On November 25th, 1975, a hearing was held to determine the presence of any additional evidence. After consultation with counsel for the crew members, I am satisfied that no evidence exists of record to controvert these facts.

4. Counsel for the claimants have presented vigorous arguments for the controlling ef-

fect of *Rhoditis*. While deciding in favor of the application of the Jones Act to a crew member claim against the shipowners, the Court in *Rhoditis* added to the list of *Lauritzen* factors a consideration of the base of operations of the shipowners and the overall pattern of contacts a shipowner maintains with the U.S. In *Rhoditis*, the Greek corporation managing the vessel maintained of-

criterion upon which claimants can strongly rely is the place of the wrongful act. However, the court in *Lauritzen* denigrated the importance of the place of the wrongful act relative to factors 2 through 6. As noted by Mr. Justice Jackson, "The test of location of the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." 345 U.S. at 583, 73 S.Ct. at 929. As to the other criteria, 2–6, the crewmen would clearly lose except, perhaps, for the argument as to the law of the forum. Again, Mr. Justice Jackson's comments on the law of the forum are dispositive of this consideration. As he stated, "Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far flung—that there would be no justification for altering the law of the controversy just because local jurisdiction of the parties is obtainable." 345 U.S. at 591, 73 S.Ct. at 932. The foregoing comment by Mr. Justice Jackson eliminates the relatively slight consideration accorded the law of the forum in determining the applicable law governing a controversy such as that now before me.

## CONCLUSION

The facts as presented convince me of the inapplicability of both the Jones Act and the general maritime law of the United States to the adjudication of the crew members' claims against the shipowner. Once having made that determination, there remains no justification for retaining jurisdiction over these claims. The litany of cases on this subject is so extensive, all pointing unerr-

ingly to the result of the application of *forum non conveniens*, that it is unnecessary to review the undisputed principles other than to cite some of the relevant precedents in the footnote below.[5]

fices in New York City and New Orleans. Additionally, 95% of the stock in the management corporation was owned by a United States domiciliary. In contrast, no evidence has been presented to refute the fact that the ownership of stock in Lidoriki Maritime Corporation, record owner of the ELIAS, is held entirely by Greek citizens residing in Greece.

5. *Xerakis v. Greek Line, Inc.*, 382 F.Supp. 774 (E.D.Pa.1974); *Samaras v. S. S. Jacob Verlome*, 187 F.Supp. 406 (E.D.Pa.1960); *Frangiskatos v. Konkar Maritime Enterprises*, 353 F.Supp. 402 (S.D.N.Y.), aff'd, 471 F.2d 714 (2d Cir. 1972); *Yohanes v. Ayers S.S.*, 451 F.2d 349 (5th Cir. 1971); *Zouras v. Meneleus Shipping Co.*, 336 F.2d 209 (1st Cir. 1964); *Garis v. Compania Maritime San Basilio, S.A.*, 261 F.Supp. 917 (S.D.N.Y.), aff'd, 386 F.2d 155 (2d Cir. 1966).