Petition of **CHADADE STEAMSHIP CO., Inc.,** as owner of the **S.S. YARMOUTH CASTLE,** Yarmouth Cruise Lines, Inc., and Yarmouth Cruises, Inc , in a cause of exoneration from or limitation of liability, civil and maritime.

No. 65–213.

United States District Court
S. D. Florida.
April 6, 1967.

Zock, Petrie, Sheneman & Reid, New York City, and Smathers & Thompson, Miami, Fla., for petitioner.

James A. Dixon, Jr., William M. Alper, and J. B. Spence, Miami, Fla., Proctor's Committee.

MEHRTENS, District Judge.

### ORDER GRANTING MOTION TO REQUIRE ADDITIONAL STIPULATION AND BOND

This matter is before the Court on motion of the Proctors' Committee to require petitioner, Chadade Steamship Co., Inc., to file an additional stipulation and bond with security.

This litigation arises from the burning and sinking on November 13, 1965 of the Panamanian cruise ship, Yarmouth Castle. The Yarmouth Castle was operated out of Miami, Florida, on passenger cruises to ports in the Bahamas and return. On November 12, 1965, the vessel left Miami, Florida, for a cruise to Nassau, Bahamas and return, and in the early morning hours of November 13, 1965, the vessel burned and sank on the high seas outside the territorial waters of the United States or the Bahamas. According to the shipowner's petition, the vessel was owned by Chadade Steamship Co., Inc., a Panamanian corporation, and was registered under the laws of Panama, flying a Panamanian flag. Approximately five hundred passengers and crew were aboard the vessel, the passengers being primarily nationals of the United States, and the crew and officers citizens and residents of various foreign countries.

Chadade Steamship Co., Inc., and related corporations filed a petition for limitation of and exoneration from liability on December 8, 1965. This Court entered various orders to control the litigation, including deferment without prejudice of all preliminary motions by claimants until after the filing of claims and entry of appearance of counsel. Approximately four hundred and forty claims were filed and sixty-eight proc-

tors entered appearances for various claimants. Thereafter this Court appointed a Proctors' Committee by stipulation of claimants and order of court with leave to proceed, on behalf of those stipulating claimants, with all motions, discovery and litigation involving the issues of limitation of and exoneration from liability.

In its original petition, the shipowner claimed the benefit of Sections 4281–4285 of the Revised Statutes of the United States or "any applicable Convention or Foreign law" relating to limitation of liability. Petitioner offered an interim stipulation for value in the sum of $33,000.00, the suggested value of the strippings of the Yarmouth Castle together with passage money, and further offered to file such stipulation or other security as the Court might fix, not to exceed $60.00 per ton. By order of this Court, the petitioning shipowner amended Paragraph 12 of its petition and, in addition to claiming the benefits of the limitation laws of the United States, pleaded in the alternative that in the event it be determined that the rights of the parties are governed and controlled by the laws of the Republic of Panama, "petitioner's claim the immunities and benefits of exoneration from or the limitation of liability provided for by the following Sections 1078, 1079 and 1093 of the Commercial Code of the Republic of Panama * * *." The Proctors' Committee then filed the motion presently before this Court for determination, alleging that the limitation proceedings herein are controlled by Articles 1078, 1093 and other relevant portions of the Commercial Code of the Republic of Panama; that the Panamanian law provides for limitation of liability of a shipowner in a marine disaster; that these provisions of the Panamanian law fix the valuation of a vessel; that they are attached to the right and are a part of the substantive law of Panama and that the stipulation and security required of the shipowner in this proceeding must be determined in accordance with the laws of Panama.

Before discussing the dispositive issues before the Court, it may be well to advert to those legal issues which are settled law or as to which there is no serious contention to the contrary by the parties. First, it is long settled that Chadade Steamship Co., Inc., as a Panamanian corporation and as owner of a Panamanian flag vessel involved in a marine disaster, has the right to litigate its limitation of liability, if any, in this Court, nor does the Proctors' Committee contend to the contrary. National Steam Navigation Co. v. Dyer (The Scotland), 105 U.S. 24, 26 L.Ed. 1001, 46 U.S.C. Sec. 183. Second, on the high seas the law of the flag of a vessel generally governs not only criminal conduct but also the substantive rights of crew, passengers and the shipowner in civil causes of action arising thereon. Lauritzen v. Larsen, 345 U.S. 571, 583–585, 73 S.Ct. 921, 97 L.Ed. 1254; Oceanic Steam Navigation Co., Ltd. v. Mellor (The Titanic), 233 U.S. 718, 732, 34 S.Ct. 754, 58 L.Ed. 1171; Old Dominion Steamship Co. v. Gilmore (The Hamilton), 207 U.S. 398, 403, 28 S.Ct. 133, 52 L.Ed. 264; United States v. Rodgers, 150 U.S. 249, 260, 264, 14 S.Ct. 109, 37 L.Ed. 1071; Ozanic v. United States (The Petar), 2d Cir., 165 F.2d 738, 743; United States Shipping Board Emergency Fleet Corp. v. Greenwald, 2d Cir., 16 F.2d 948, 950.

In the absence of some overriding public policy to the contrary, the right to recover for a tort or other personal cause of action depends upon and is measured by the law of the foreign country where the cause of action arose. Cuba Railroad Co. v. Crosby, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274; Slater v. Mexican National Railway Co., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900; Oceanic Steam Navigation Co., Ltd. v. Mellor, supra. The petitioning shipowner, however, urges not only the absolute right to litigate limitation of liability in the United States, but also that the amount of the shipowner's stipulation for value is purely procedural under local limitation statutes and petitioner's bond should be determined by the laws of the

forum. Oceanic Steam Navigation Co. v. Mellor (The Titanic), supra.

In *The Titanic*, a British vessel collided with an iceberg on the high seas and sank with a multiple loss of life. The shipowner filed a petition to limit liability in the United States claiming the benefit of the United States limitation statutes. Mellor, a British national, filed exceptions to the petition asserting that the forum's limitation statutes cannot apply to a disaster occurring on the high seas on a British flag vessel. The trial court dismissed the petition as to Mellor. On appeal, the Court of Appeals certified three questions to the Supreme Court for answer as follows: (1) whether under these facts and where *there is nothing before the Court to show what, if any, is the law of a foreign country to which the vessel belongs touching the owner's liability for such disaster*, the owner can proceed in a United States Court under United States limitation statutes; (2) whether the shipowner can proceed under the United States statutes in that country even though the foreign country makes provision for limitation of liability; and (3) whether, in a limitation proceeding under United States statutes, the Court will enforce *the law of the United States or of the* foreign country with respect to the limit amount of the owner's liability. The Supreme Court held that a foreign shipowner may avail itself of United States courts and proceed under the limitation laws of the United States in a single vessel disaster occurring on the high seas. The Court observed that it was dealing with "a liability assumed already to exist on other grounds." It held that the United States statute on valuation was procedural and, in the absence of proof to the contrary, assumed that the English law of limitation was likewise procedural. It then held, purely as an exercise in comparing conflicting procedural rules of two jurisdictions, that the procedural rules of the *lex fori*, the United States, would control the amount of the bond, *if any, that would be required of* the shipowner in order to maintain its limitation action in the United States courts. *The Titanic* became, and still is, sound authority for that proposition.

Black Diamond Steamship Corp. v. Robert Stewart & Sons, Ltd. (The Norwalk Victory), 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754, posed a different aspect of the problem. In that case, the Norwalk Victory, an American vessel, collided with a British vessel, the Merganser, in the Schelde River within territorial waters of Belgium and struck and damaged the river bank. The owners of the Norwalk Victory filed a petition to limit liability in the United States. Admitting that the value of the vessel was about $1,000,000.00, the shipowner insisted that its stipulation and bond was controlled by the substantive law of Belgium (The International Convention at Brussels of 1924, also called The Brussels Convention), and under that law, posted a bond of approximately $325,000.00. The District Court, holding that the amount of the bond was procedural, controlled by United States law (as in *The Titanic*), found that the bond should have been in the amount of $1,000,000.00 and dismissed the petition for limitation.

■ The issue presently before this Court was described by Mr. Justice Frankfurter, as follows, 336 U.S. 394, 395, 69 S.Ct. 627:

"Having decided that the case must be remanded because the petition was improperly dismissed, we turn to the question whether there are any circumstances under which the Belgian limitation would be enforceable by our courts. On this point we agree with the Court of Appeals—and disagree with the District Court—*that if, indeed, the Belgian limitation attaches to the right, then nothing in* The Titanic, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171, *stands in the way of observing that limitation.* The Court in that case was dealing with 'a liability assumed already to exist on other grounds.' Id. at 733, 34 S.Ct. at page

756. But if it is the law of Belgium that the wrong creates no greater liability than that recognized by the Convention of 1924, we cannot, without more, regard our own statutes as expanding the right to recover. Any other conclusion would disregard the settled principle that, in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred." (Emphasis supplied.)

\* \* \* \* \* \*

(p. 396, 69 S.Ct. p. 627) "If, on the other hand, the Convention merely provides procedural machinery by which claims otherwise created are brought into concourse and scaled down to their proportionate share of a limited fund, we would respect the equally well settled principle that the forum is not governed by foreign rules of procedure. See Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104; Davis v. Mills, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067. We leave open the choice between these opposing hypotheses."

This Court understands the foregoing language to mean that this Court should examine the Panamanian law as proffered by the parties to determine whether, first, the law of the Republic of Panama recognizes any limitation on a shipowner's liability, and second, whether Panamanian limitation is procedural or substantive in nature. This Court's understanding of the pertinent language in The Norwalk Victory is substantiated by Gilmore & Black, "The Law of Admiralty," p. 738:

"What this apparently meant was that the District Court should look into the question whether by Belgian law the limitation convention was regarded as substantive or procedural (or something in between); if substantive ('attaching to the right'), then the owner's maximum liability would be determined by Belgian law; if 'merely \* \* \*

procedural', then our own Limitation Act would determine liability."

Although both *The Titanic* and *The Norwalk Victory* have been cited many times since the latter decision, no court seems to have been confronted by any conflict, real or apparent, between the two. In Kloeckner Reederi und Kohlenhandel, G.M.B.H. v. A/S Hakedal (The Western Farmer), 2d Cir., 210 F.2d 754, the Court touched upon the two decisions. However, that Court was considering a libel *in personam*, without any issue as to the sufficiency of the bond in a limitation proceeding. It correctly held that *The Norwalk Victory* did not overrule *The Titanic* and did not control the issue before the Court in that case, i. e., discretionary declination of jurisdiction in a claim between foreign nationals.

At the argument on the Committee's motion, both parties presented expert testimony on Panamanian law by qualified Panamanian lawyers in open court. The shipowner's amended petition to limit liability and the testimony of experts for both parties establishes substantial agreement that Panama has codified the generally recognized principle of maritime law that a shipowner, under specified circumstances, may limit its liability in claims arising from a marine casualty; that this limitation of liability, being a specified part of the right itself, and attached to it, is substantive in nature, rather than procedural; and that the extent of the shipowner's liability is defined by Article 1078 of the Commercial Code of the Republic of Panama as follows:

"Each ship is considered to be an entity with limited responsibility as to its patrimony. The indemnization of the insurance is part of the patrimony of the vessel." (Proctors' Committee Exhibit No. 1)

The only conflict before me regarding the interpretation and meaning of the proven Articles of the Commer-

cial Code of Panama pertains to the second sentence of the above quoted Article. The expert witness offered by the shipowner stated that this sentence referred only to the hull insurance on the vessel, or, more precisely, the difference between the face value of the hull insurance and the amount thereof that might be payable to a loss payee-mortgagee, if any. The Proctors' Committee expert expressed the opinion that this sentence referred not only to hull insurance but also to what is called "protection and indemnity insurance" or "P & I insurance" as well. This interpretation was said to express the public policy of the Republic of Panama, as found in other Articles of the Commercial and Civil Codes of Panama pertaining to other forms of insurance and creditors rights, to wit: that insurance on property, whether insuring the property itself or indemnifying the owner thereof for losses occasioned by its destruction, is subject first to the claims of those third persons who may have sustained loss or damage by reason of the casualty. With this interpretation the Court agrees.

It is noteworthy that Article 1507 of the Commercial Code of Panama grants a preferred lien against a vessel to claims for " * * * (5) Indemnities due for damages sustained through fault or negligence * * * " and that these claims may be enforced by attachment and sale of the ship (Article 1527, Commercial Code of Panama). In such event, the ship may be released by a bond conditioned to pay to such a claimant " * * * the amount demanded to the extent that it may be legitimate" (Article 1529, Commercial Code of Panama). If, therefore, a vessel may be attached and sold for such a preferred unliquidated lien, it seems only logical that if a prudent shipowner should purchase P & I insurance against such an event, that such insurance should be included in the definition of the res, or patrimony, available to satisfy such a lien. And, since the aspect of the proceedings before the Court at this time concerns primarily the *in rem* liability of the shipowner, i. e., the value of the *res* to be surrendered for the security of the claims asserted against it, this definition of the *res* as prescribed by Panamanian law should be applicable to a vessel owned, registered and navigated under the laws of the Republic of Panama. See Hartford Accident & Indemnity Co. of Hartford v. Southern Pacific Co., 273 U.S. 207, 215, 47 S.Ct. 357, 71 L.Ed. 612.

In consideration of the foregoing, this Court makes the following Special Findings of Fact with respect to the laws of Panama:

(1) The translations of those portions of the Commercial Code of the Republic of Panama as contained in Proctors' Committee Exhibit No. 1 in the record of this hearing are true and accurate translations of those portions of the Code that they purport to represent.

(2) The law of the Republic of Panama acknowledges that a right of recovery against a shipowner is limited to the patrimony of the vessel as described in Article 1078 of the Commercial Code of Panama set forth above.

(3) The second sentence of Article 1078 of the Commercial Code of Panama refers not only to hull insurance but to protection and indemnity insurance as well, up to the amount necessary to cover the value of the claims pleaded in this proceeding or the face value of said insurance, whichever sum is smaller.

(4) The limitation of liability contained in the Panamanian law is substantive rather than procedural and attaches specifically to the right.

This Court perceives no overriding public policy of the United States which would preclude application of the Panamanian law as set forth above. I do not understand that there is any pub-

lic policy of this country that requires that its own procedural law should supersede the substantive law of Panama on limitation of liability.

If the foregoing analysis of *The Titanic* and *The Norwalk Victory* is not correct, then the Court is of the opinion that *The Titanic* should be re-examined because, as otherwise construed, *The Titanic*, insofar as it would limit the application of foreign liability statutes, would operate as a last remnant of the theory that each nation should apply the law of nations as it interprets that law. This notion has long been repudiated and has been superseded by the conflict of laws which is based upon a more realistic appraisal of world conditions and more responsive to the practicalities of modern maritime commerce.

*The Titanic* must have held either that the American statute required that American law be applied regardless of the otherwise applicable foreign law; or that the application of the foreign limitation would be contrary to American public policy; or finally, that the entire limitation of liability proceedings must be classified as procedural. *The Titanic* may be best explained by noting that the Court failed to make any distinction between the provisions of the limitation statutes which outline the steps to be taken by a shipowner in obtaining a liability limit and the substantive limit itself. It is difficult to conceive that the American statute purports to declare that the enforcement of a foreign limitation of liability would be offensive to American notions of justice while at the same time enacting a limitation of liability substantially like those of a foreign country. On the other hand, if the distinction is made between substantive limit of liability and the procedure or steps whereby this limit may be obtained by a shipowner, applicable policy arguments relative to the conflict of laws are all in favor of the restricted scope of the statute. If these policy arguments and the correct conflict of laws

theory are followed, American courts should and would apply the monetary limit of the American statute only when referred thereto by choice-of-law rules. Conflict of law doctrines are based essentially on the concept of justice corresponding to the moral and social values which are held by society. People frame their expectations with reference to the legal system with which their legal relationships have the most significant contacts at the time of the event in question and expect that the law of that jurisdiction will govern these relationships. If the parties' justified expectations are dependent upon foreign law for substantive rights, that law should be applied.

The rule stating that the maximum amount of liability should be classified as substantive to the extent that the application of a foreign liability limit would not interfere in any way with the smooth running of the American machinery. The actual monetary limitation may easily be abstracted from all the provisions which would interfere with those rules of the forum indicating what steps the shipowner may take to obtain a liability limit. Thus, the procedure, such as filing the petition, posting of bond, notices, and other papers, is a part of the forum's machinery set up by the statute to handle the specific situation. Deviation from these rules would indeed be inconvenient but application of the actual monetary limit itself presents no such difficulties. It eliminates forum shopping depending upon whether American law, English law or the Brussels Convention favors the first to sue and fixes the rights and duties of the parties as of the moment of the catastrophe. This result is in accord with the majority of the European courts which do not hesitate to apply the foreign limitation of liability as a matter of substance. The foreign shipowner is not discriminated against because he is being treated exactly as he would have been in his home forum and the problem of possible multiple recovery in various countries would be eliminated.

The Limitation of Liability Act was passed primarily to encourage American shipping and to place it on an equal footing with foreign shipping. The Congressional debates reveal no other purpose. Cong.Globe., 31st Congress 2d Session 715 (1851) covering 1850–1851. Judging from the Congressional debates on the Act, it can hardly be said that it was originally enacted for the protection of other foreign shipping interests. If then the only purpose of the Act was to protect and encourage American shipping interests, the reasoning of *The Titanic* lacks persuasiveness insofar as it would apply the Act to foreign shipping interests. Without more, that American policy would not be contravened if American citizens were allowed to recover a greater sum from Panamanian shipowners than the American Act would allow. Having deliberately sought and obtained the benefits given by a foreign law, there seems no basis in equity and justice upon which the foreign shipowner should be enabled to receive those benefits and yet evade the burdens that may accompany them.

It is therefore the order of this Court that the Proctors' Committee Motion to Require the Petitioner to File an Additional Stipulation and Bond with Security be and the same is hereby granted and the petitioner be and it is hereby ordered to deposit forthwith with the Clerk of this Court a stipulation and bond with surety in a sum equal to the value of the S. S. Yarmouth Castle, its pending freight, both paid and payable, the difference between the face value of its hull insurance and such amount as may be paid or payable to any legitimate loss payee-mortgagee as described in said policy of insurance if any, and any other insurance possessed by it and applicable to the claims asserted herein in an amount necessary to cover the value of said claims as pleaded herein or the face amount thereof whichever sum is smaller.