Complaint of **LIDORIKI MARITIME CORPORATION**, owner of the **TANK VESSEL ELIAS**, Eletson Maritime Corporation, alleged owner of the Tank Vessel Elias, and Gregory B. Hadjieleftheriadis, alleged owner of the Tank Vessel Elias, for exoneration from and limitation of liability.

Civ. A. No. 74–2551.

United States District Court, E. D. Pennsylvania.

Jan. 28, 1976.

On Motion for Entry of Final Judgment Feb. 18, 1976.

John T. Biezup, Philadelphia, Pa., for petitioners.

Marvin I. Barish, Alan Epstein, and Sidney J. Smolinsky, Philadelphia, Pa., for respondents—personal injury claimants.

HIGGINBOTHAM, District Judge.

In this maritime action, where the owners and/or alleged owners of the tank vessel ELIAS[1] seek exoneration from and limitation of liability, certain injury claimants have moved this Court to attach the proceeds of hull insurance on the tank vessel ELIAS and to add

---

1. The ELIAS was totally destroyed by a series of explosions and fires while it was berthed at the Fort Miffin Terminal, Philadelphia, on April 9, 1974.

those proceeds to the limitation fund.[2] The claimants argue that the shipowner is a Panamanian corporation, that Panamanian law applies, and that under the applicable Panamanian law the limitation fund includes the proceeds of hull insurance. While the vessel owner does not deny that it is a Panamanian corporation, it nevertheless contends that the applicable Panamanian law has not been pleaded or proven in this case and that, in any event, statutes governing limitation of liability are procedural so that the law of the forum, rather than the law of Panama, applies. After consideration of the briefs and memoranda of law submitted by the parties and after hearing argument and re-argument on the issue, I have concluded, for reasons that will hereinafter appear and on the basis of the present record, that the motion of the injury claimants must be denied.

During re-argument of this issue, counsel for the injury claimants substantially narrowed the scope of this Court's inquiry when he conceded that his client's case stands or falls on the applicability of *Petition of Chadade Steamship Co.,* 266 F.Supp. 517 (S.D.Fla.1967). See N.T., December 19, 1975, at 2–3. Unfortunately for the injury claimants, their case falls. As I read *Chadade,* it does not support their position in the instant matter.

The *Chadade* case arose out of the burning and sinking on the high seas of a Panamanian cruise ship, the Yarmouth Castle, on November 13, 1965. Less than a month later, the shipowner filed a limitation petition alleging that it was a Panamanian corporation, and that the Yarmouth Castle was registered under the laws of Panama and flew a Panamanian flag. In the course of the limitation proceeding, a court-appointed "Proctors' Committee" sought a determination from the court that the substantive law of Panama fixed both the valuation of the vessel and the stipulation and security required of the shipowner. The parties agreed that Panamanian law governed the limitation proceeding and that under Panamanian law hull insurance proceeds were part of the patrimony of the vessel. The parties differed, however, on whether that patrimony included protection and indemnity insurance as well. The court accepted the interpretation of Panamanian law offered by the Proctors' Committee's expert witness and held that protection and indemnity insurance was indeed a part of the *res,* or patrimony, of the Yarmouth Castle. The court noted that "this definition of the *res* as prescribed by Panamanian law should be applicable to a vessel owned, registered and navigated under the laws of Panama." 266 F.Supp. at 522. Earlier, the court, citing numerous cases, had pointed out that "on the high seas the law of the flag of a vessel generally governs not only criminal conduct but also the substantive rights of crew, passengers and the shipowner in civil causes of action arising thereon." Id. at 519.

The facts of the instant case are significantly different from those in *Chadade.* The ELIAS was a Greek registered tank vessel. It flew a Greek flag. Its home port was Piraeus, Greece. While the shipowner, Lidoriki Maritime Corporation, is a Panamanian corporation, its principal place of business was Piraeus, Greece. Finally, the explosions and fires that destroyed the ELIAS occurred not on the high seas but within the territorial waters of the United States. See generally my opinion on another aspect of this proceeding. 404 F.Supp. 1402–1404 (E.D.Pa.1975).

2. Subsequent to the filing of their motion, the injury claimants effectively amended their prayer for relief. They now seek an Order from this Court "requiring the shipowners to deposit with the Clerk of this Court a new Stipulation and Bond with surety in a sum equal to the value of the SS Elias, its pending freight, both paid and payable, the face value of its hull insurance and any other insurance possessed by it and applicable to the claims asserted herein in an amount necessary to cover the value of said claims as pleaded herein or the face amount thereof, whichever sum is smaller." Doc. # 183, at 2–3. See N.T., December 19, 1975, at 3–4.

Given these substantial factual differences, it is evident that the injury claimants' reliance on *Chadade* is misplaced. There is, in the first place, a substantial question about whether Panamanian law and its definition of the *res* of the ELIAS should apply at all in this proceeding. To be sure, the ELIAS was Panamanian-owned, but that was the vessel's sole contact with Panama and its laws. Moreover, the rationale of the *Chadade* case itself, where the flag of the vessel was obviously central to the court's decision, suggests that the law of Greece should control, since the ELIAS was registered and navigated under the laws of that nation, not of Panama. See 266 F.Supp. at 519, 522. I need not, and do not, decide whether Greek law should govern this aspect of this proceeding. It suffices to say that, in light of the present record, it would be obviously premature for this court to hold that the interpretation of Panamanian law set forth in *Chadade* should control my decision on the instant issue. Accordingly, the injury claimants' motion that the shipowner deposit a new stipulation and bond with the Clerk of this Court will be denied. An appropriate order will be entered.

## ON MOTION FOR ENTRY OF FINAL JUDGMENT

In an Order of this Court dated December 10, 1975, as amended by a subsequent Order dated December 19, 1975, on motion of the petitioners in this proceeding for exoneration from and limitation of liability, I dismissed on the ground of *forum non conveniens* the claims of certain personal injury claimants (hereinafter "respondents") against the petitioners in this and several other related cases. The respondents now seek immediate appellate review of that determination and move the Court to enter final judgment for the petitioners pursuant to Fed.R.Civ.P. 54(b) or, in the alternative, to certify my December 10, 1975 determination as a controlling issue of law pursuant to 28 U.S.C. § 1292(b). See Docs. # # 202 and 203. The petitioners neither oppose nor endorse these motions. See Doc. # 207, at 2. For reasons that will hereinafter appear, I have concluded that the entry of final judgment pursuant to Fed.R.Civ.P. 54(b) is appropriate. Accordingly, I do not reach the issue presented by respondents' alternative motion under 28 U.S.C. § 1292(b).

Since the decision of the Court of Appeals for the Third Circuit in *Allis-Chalmers Corporation v. Philadelphia Electric Company,* 521 F.2d 360, 364 (3d Cir. 1975), it is incumbent upon district judges in this circuit to make "a brief reasoned statement," see *Gumer v. Shearson, Hammill & Co., Inc.,* 516 F.2d 283, 286 (2d Cir. 1974), of their reasons for entering a final judgment pursuant to Fed.R.Civ.P. 54(b). A review of the factors present in this case which militate for and against final certification has convinced me that this is "the infrequent harsh case" where "finality of judgment should be ordered to advance the interests of sound judicial administration and public policy." *Allis-Chalmers, supra,* at 365.

In the first place, the determination expressed in my orders of December 10 and December 19 is surely a "final decision" within the meaning of 28 U.S.C. § 1291 and is therefore within the jurisdiction of the Court of Appeals. The claims of the respondents against the petitioners have been dismissed. Insofar as those claims are concerned, the respondents are out of court and, barring appellate reversal of that dismissal, cannot return.

Secondly, as a result of that dismissal, the respondents must seek recovery against the petitioners in Greece, the forum to which they have been referred. Counsel for the respondents must represent them not only in Greece, but in this Court as well, in their actions against the other parties named in the original complaints. Petitioners must retain not only counsel here to defend against the other claimants in this Court, but also counsel in Greece to defend against those claimants who have been dismissed

by this Court. Prompt review by the Court of Appeals of the dismissal of the claims of the respondents would determine whether this bifurcated representation, with its attendant expenditure of time, energy and money, is in fact necessary, and would do so before the petitioners and respondents are put to that additional effort and expense. I am confident that such bifurcated representation is necessary, see my opinion, 404 F.Supp. 1402 (E.D.Pa.1975), but I recognize that others may disagree and, in fairness to the litigants, I believe that the Court of Appeals should have an early opportunity to consider my decision on the issue of *forum non conveniens.*

Moreover, if an appellate determination of the rights of the respondents against the petitioners is postponed until the resolution of all the claims against all the parties in this and related actions, the disposition of the entire limitation proceeding may be delayed for months and perhaps years. Before an assessment of individual damages can be made, the petitioners must be able to identify with certainty all proper claimants to the funds available, whether limited or unlimited. That identification cannot be made until respondents' appeal of my ruling on *forum non conveniens* is decided. If, on the other hand, respondents are permitted to appeal at the present time and their status as claimants to the limitation fund is adjudicated in the near future, the entire limitation proceeding, including the assessment of damages, can be concluded with relative dispatch.

A final and extremely important factor which favors the entry of judgment at this time is the disruption of the discovery process that could occur if appellate review of respondents' claims is postponed until my resolution of all other outstanding issues in this and related cases. At present, both petitioners and respondents remain parties to this litigation, but neither are under any obligation to provide discovery to each other on the claims that I have dismissed. In all likelihood, if an appellate court were later to reverse my decision on *forum non conveniens,* a substantial portion of the discovery process would have to be repeated. Such an occurrence would impose a staggering and unnecessary burden, whether of expense or effort or delay, on all parties to this litigation, a burden that could be avoided by prompt appellate review of my *forum non conveniens* decision. Aware of this possibility, I asked counsel for petitioners and respondents to agree to proceed with discovery in these actions as though respondents' claims had not in fact been dismissed, pending review by the Court of Appeals of my Rule 54(b) determination and, if appropriate, of my dismissal of respondents' claims. At a conference in my chambers, counsel so agreed. See N.T., January 22, 1976. This agreement clearly serves the interest of judicial economy. Early appellate review of my ruling on *forum non conveniens* would serve the same interest equally well.

In light of all the relevant circumstances, then, I expressly determine that there is no just reason for delay in entry of final judgment under Fed.R.Civ.P. 54(b) on respondents' claims against petitioners. An order expressly directing the entry of said judgment will be entered.