Thomas O. Murphy, Thompson, Hine & Flory, Cleveland, Ohio, for claimants.

### Complaint of the BETHLEHEM STEEL CORPORATION, etc.

### Civ. A. No. C75–104.

United States District Court,
N. D. Ohio, E. D.

Oct. 20, 1977.

See also 435 F.Supp. 944.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is a maritime action wherein plaintiff, Bethlehem Steel Corporation, has asserted its statutory right, pursuant to 46 U.S.C. §§ 183 *et seq.,* as amended, to a limitation of liability on claims arising from the collision of its vessel, the Steamer Steelton, with Bridge No. 12 in the course of the ship's passage through the Welland Canal of the St. Lawrence Seaway. The maritime and admiralty jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1333.

On August 5, 1977, plaintiff filed in this Court its Motion to Dismiss All Claims, appending thereto a certified copy of the July 21, 1977 Judgment Order of Justice

George Addy of the Federal Court of Canada, Trial Division, delivered in an action related to these proceedings styled *Bethlehem Steel Corporation v. The St. Lawrence Seaway Authority,* No. T–3418–74. Claimants herein responded in opposition to the Motion on August 16, 1977. Plaintiff thereafter filed on September 13, 1977, a Supplement to Plaintiff's Motion to Dismiss All Claims, appending thereto a certified copy of the Final Judgment Entry in the aforesaid Canadian proceeding. On October 6, 1977, claimants filed a Supplemental Response in Opposition to Plaintiff's Motion to Dismiss Claims to which plaintiff replied on October 14, 1977. In addition, plaintiff filed on October 14, 1977 a Supplement to its Motion to Dismiss All Claims. The Court is, therefore, called upon to render a final decision respecting plaintiff's liability on the several claims filed herein. A brief review of the facts and circumstances giving rise to this action and a chronology of the judicial proceedings to date, both here and in Canada, is appropriate.

The Steamer Steelton is a Great Lakes bulk freighter owned and operated by plaintiff, a corporation duly organized and existing under the laws of the State of Delaware. On August 25, 1974, while proceeding through the Welland Canal on a voyage from Buffalo, New York to Contrecoeur, Quebec, Canada, the Steelton collided with Bridge No. 12, a vertical lift highway bridge spanning the Welland Canal, causing extensive damage to both the vessel and the bridge. As a result of this collision, which occurred wholly within the territorial boundaries of Canada, Bridge No. 12 was destroyed. The debris obstructing the Welland Canal prevented vessels from traversing the waterway at that location for several days.

On September 26, 1974, plaintiff filed an action in the Federal Court of Canada against the St. Lawrence Seaway Authority and all other persons having claims against plaintiff and the steamship Steelton requesting a limitation of liability under Canadian law. Pursuant to the Canada Shipping Act, the Federal Court of Canada limited plaintiff's liability and ordered plaintiff to pay into that court the amount of $671,-489.09 in Canadian dollars, plus interest to the date of deposit. On November 1, 1974 plaintiff deposited with that court the amount of $680,733.56 in Canadian dollars, including interest, ($691,761.44 in United States dollars).

In addition to those actions filed in the Federal Court of Canada, a number of separate actions were filed against plaintiff in this Court. Plaintiff thereafter filed in this Court a Complaint, pursuant to Rule 9(h), Fed.R.Civ.P., Rule F, Supplemental Rules for Certain Admiralty and Maritime Claims, and 46 U.S.C. § 185, petitioning this Court for limitation of liability, while claiming the benefit of the lesser limitation provided by the Canada Shipping Act.

Subsequent to the filing of an *ad interim* stipulation for value and a surety deposit in the sum of $850,000.00, with interest, (the limit of liability under 46 U.S.C. § 183) this Court issued, on February 6, 1975, a Monition ordering all persons or corporations claiming damages for any and all losses resulting from the aforesaid collision, to file their respective claims and answers with the Clerk of this Court on or before March 10, 1975, (later extended to April 11, 1975). The Court further enjoined the institution and prosecution of any and all suits, actions or legal proceedings in any court wheresoever situated, arising as a result of the aforesaid collision, except in proceedings for limitation of liability against plaintiff or against the Steelton, other than the proceedings already commenced in the Federal Court of Canada, Trial Division, Ottawa, Canada, Case No. T–3418–74.

Pursuant thereto, a number of separate actions arising out of the Steelton collision, which were then pending before this Court, were stayed while each of the plaintiffs therein filed claims in this proceeding. The following claims, identified by the name of the claimant, the original case number (if any separate action is still pending before the Court), the nature of the claim and the amount of damages sought, remain pending in this action:

Claim of Marriott Corporation, through its division, Sunline Agencies, and Oceanic Sunline Special Shipping Company; C74–1170; for the delay of its chartered passenger vessel Stella Maris II, in the amount of Forty-One Thousand, Three Hundred and Fifty-Six Dollars ($41,356.00).

Claim of Weyerhaeuser Company, through its division, Weyerhaeuser Line; C74–1174 for the delay of its chartered cargo vessel Pallas, in the amount of Sixty-One Thousand, Nine Hundred and Seventeen Dollars and Nineteen Cents ($61,917.19).

Claim of A/S Rederiet Odfjell; C74–1180; for the delay of its cargo vessel Bow Rogn, in the amount of One Hundred Thousand Eight Hundred Forty-Eight Dollars and Thirty-Three Cents ($100,848.33).

Claim of Polski Linie Ocaniczne; C74–1196; for the delay of its cargo vessels Zawiercie, Zakopane and Zabrze, in the amount of Ninety-Two Thousand Dollars ($92,000.00).

Claim of Naviera Alcala, S.A.; C74–1197; for the delay of its chartered cargo vessel Sebastiano, in the amount of Seventy Thousand, Five Hundred Dollars ($70,500.00).

Claim of Matthew Shipping Company Limited and Matthew Ship Chartering Limited; C74–1199; for the delay of its chartered motor vessels Sissy and Jobella, in the amount of Eighty Four Thousand, Three Hundred and Fifty Dollars ($84,350.00).

Claim of I. S. Joseph Shipping Co., Ltd.; C74–1200; for the delay of its chartered cargo vessel Golfo Di Palermo, in the amount of One Hundred and Forty-Five Thousand Dollars ($145,000.00).

Claim of Manchester Lines, Inc.; C74–1201; for the delay of its chartered cargo vessels Fortuna and Manchester Mercurio, in the amount of Seventy-Five Thousand Dollars ($75,000.00).

Claim of Naviera Ceresio S.A.; C74–1202; for the delay of its motor vessel Honesty, in the amount of One Hundred Thousand Dollars ($100,000.00).

Claim of Scindia Steam Navigation, Ltd.; C74–1203; for the delay of its motor vessel Jalayaya, in the amount of One Hundred Thousand Dollars ($100,000.00).

Claim of Federal Commerce and Navigation [1974] [Ltd.]; C74–1204; for the delay of its chartered motor vessels Chertal, Elainne, Atlantic Charity, Pitria, Atlantic Hope, Federal Seaway and Marylisa, in the amount of Three Hundred Thousand Dollars ($300,000.00).

Claim of Skips A/S Westray; C74–1213; for the delay of its chartered cargo vessels Mambo and Rhumba, in the amount of Ninety-Three Thousand Dollars ($93,000.00).

Claim of Hyman-Michaels Company; C75–2; for the delay of its chartered cargo vessel Fifth Avenue, in the amount of One Hundred Thousand Dollars ($100,000.00).

Claim of Jadranska Slobodna Plovidba; C75–3; for the delay of its cargo vessel Makarska, in the amount of Forty-Five Thousand Dollars ($45,000.00).

Claim of Ocean Transport, Inc.; C75–38; for the delay of its chartered motor vessel Diakan Truth, in the amount of Sixty-Six Thousand, One Hundred and Eleven Dollars and Forty-Eight Cents ($66,111.48).

Claim of Kommanditgesellschaft Great Lakes Transcaribbean Line G.M.B.H. and Co.; C75–39; for the delay of its chartered motor vessels Faifun and Dorothea Bolten, in the amount of Eighty Thousand Dollars ($80,000.00).

Claim of Richmond Shipping Limited and Cast Shipping Limited; C75–40; for the delay of its chartered cargo vessel Atlantic Skou, in the amount of Seventy-Five Thousand Dollars ($75,000.00).

Claim of Luria Brothers & Company, Inc.; for the delay of its chartered cargo vessel Vanda, in the amount of Forty-Two Thousand Dollars ($42,000.00).

Claim of Murmansk Shipping Company; for the delay of its cargo vessels Bal-

tijsk and Sasha Borodulin, in the amount of Twenty-Three Thousand Dollars ($23,000.00).

Claim of Black Sea Shipping Company, for the delay of its cargo vessel Donetsky Metallurgyovv, in the amount of Eighty-Eight Thousand Dollars ($88,-000.00).

Claim of Kurt Orban Company, Inc.; for demurrage fees, interest and other charges resulting from the delay in the shipment of steel coils aboard the cargo vessel S. S. Aalsum, in the amount of One Hundred and Six Thousand, One Hundred and Two Dollars and Ninety-Five Cents ($106,102.95).

Claim of Parcel Tankers, Inc.; for the delay of its chartered vessel M/T Stolt Condor, in the amount of One Hundred and Eight Thousand, Two Hundred and Sixty Dollars ($108,260.00).

Upon the Motion of plaintiff, the matter was subsequently brought to a hearing before this Court to determine the applicable law governing the limitation of liability, to wit: the Law of Canada, i. e., the Canada Shipping Act, §§ 647, *et seq.*, as amended, or the law of the United States, i. e., an Act of Congress of March 3, 1851, 46 U.S.C. §§ 183 *et seq.*, as amended. Upon a thorough review of the Canada Shipping Act, §§ 647 *et seq.*, the pleadings and oral arguments of counsel, the testimony of the expert witnesses, together with the relevant case authority, the Court issued its Order of April 22, 1976 in which it determined the applicable law of the case. Initially, the Court adopted the settled principle that "in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred," the *lex loci delicti commissi.* *Black Diamond S. S. Corporation v. Robert Stewart & Sons (Norwalk Victory)*, 336 U.S. 386, 396, 69 S.Ct. 622, 93 L.Ed. 754 (1949). *See Cuba Railroad Company v. Crosby*, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274 (1912); *Slater v. Mexican National Railroad Company*, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904); *Petition of Chadade Steamship Co., Inc. (Yarmouth Castle)*, 266 F.Supp. 517 (S.D.Fla.1967). Since the collision of the Steelton with Bridge No. 12 occurred within a Canadian waterway, it was determined that the rights and liabilities of the parties arising as a consequence of the collision are governed by the law of Canada.

Further examination of the law revealed the equally settled principle that even "where the rights of the parties are grounded upon the law of jurisdictions other than the forum, . . . the forum will apply the foreign substantive law, but will follow its own rules of procedure." *Bournias v. Atlantic Maritime Co., Ltd.*, 220 F.2d 152, 154 (2d Cir. 1955). Upon exhaustive review of the somewhat sparse legal precedent, the Court determined that the specific limitation of liability provisions of the Canada Shipping Act were procedural in nature and that the law of the forum, i. e., 46 U.S.C. §§ 183 *et seq.*, must determine the maximum limitation of the fund created in the action before this Court. Having so determined, plaintiff's surety deposit of $850,-000.00, previously deposited with the Court pursuant to 46 U.S.C. § 185, was not diminished to reflect the lesser monetary limit of the Canada Shipping Act.

Now, in conformity with the Court's prior ruling that the law of Canada, the *lex loci delicti commissi*, controls the issues of substantive law in the action before this Court, plaintiff moves the Court to dismiss all of the claims presented herein, citing in support of its Motion the July 21, 1977 Judgment Order of the Federal Court of Canada. In that order, Justice Addy disallowed the claims of the National Steel Corporation and the Wayne Soap Company. Plaintiff asserts, and Justice Addy himself observed, that the claims filed by both of these claimants in the Federal Court of Canada are of the same nature as the claims pending before this Court. Upon comparison, the Court concurs in this assertion and similarly concludes that the claims filed herein must be dismissed.

Alleging damages in the amount of $243,-680.20, National Steel Corporation filed a claim in the Canadian proceedings for the

loss of profits from its two motor vessels, as a result of the delay caused by the collision of the Steelton with Bridge No. 12 on the Welland Canal. The Wayne Soap Company filed a similar claim for the additional shipping costs incurred in the overland transfer of tallow, which became necessary when maritime travel was halted on the Welland Canal. Careful scrutiny of the 22 claims filed in the action before this Court reveals 21 claims for loss of profits resulting from vessel delay and one claim for additional shipping costs and interest, also resulting from vessel delay.

In his order of July 21, 1977, Justice Addy summarized at the outset the fundamental precepts of law giving rise to remedies for tortious conduct. At pages four and five of the Order, the learned trial judge stated:

> The redress of what might appear to be a real wrong will not be recognized where its enforcement would greatly impede the proper functioning of our society or, because of its intricate interrelationships, ultimately result in greater wrongs than those for which relief is contemplated. Such problems must frequently be solved pragmatically and it matters little whether we declare that the limits which must be imposed are dictated by policy, common sense or by the more philosophically acceptable concepts of social justice or of legal theory. The important thing is that the law, in this necessarily hazy area of human relations, must lay down rules which define limits which can be recognized by all members of our society in order that they may be aware of their respective rights, duties and responsibilities and govern themselves accordingly.

> In the law of torts generally, the courts, in order to formulate logically defensible basis for creating liability on the one hand and, on the other hand, for imposing limits to the responsibility for damages which might otherwise flow from a tortious act or omission, have applied to the problem of remoteness of damages three main tests. The first test is whether the alleged tortfeasor had a duty of care to the claimant; in applying this test difficulties arise in defining the nature of the duty and in establishing the class of people to whom it is owed. At times in order to restrict and at other times to enlarge the area of responsibility, the courts have resorted to the added tests of "foreseeability" of the nature of the damage and of causality, that is, of determining whether the damage was a direct consequence of the negligent act or whether it really resulted from some other intervening cause. The courts also at times refer to remoteness of damage as a separate test distinct from the other three. I, however, find difficulty in appreciating how, from the standpoint of legal theory, damage can be too remote if the nature of that damage is reasonably foreseeable, for it has been well established that once the nature of the damage is foreseeable it is no answer to say that its actual extent is not.

The Court recognized that where the damage incurred by a claimant is solely of the nature of an economic loss, and does not involve actual physical injury, "the general law is that such damage is not recoverable even where it might have been foreseeable and where the proper causal relationship between the tortious act and the damage exists." Although several exceptions to the general law have arisen in Canada, Justice Addy stated his view that "the range of cases, where economic loss is not dependent upon physical damage of some sort is recoverable, remains nevertheless very limited." *Bethlehem Steel Corporation v. The St. Lawrence Seaway Authority, supra* at 6.

To support his conclusion that there can be no recovery for economic loss resulting from vessel delay, Justice Addy cited to the recent decision in *Gypsum Carrier, Inc. v. Her Majesty the Queen*, No. T–3747–71 (Federal Court of Canada May 9, 1977). A review of the facts and circumstances in that action discloses a fact pattern which is not dissimilar to that presented herein. An ocean going freighter, the Harry Lundeberg, collided with a swing span railway bridge spanning the Fraser River near the city of New Westminster, British Columbia. As a result of the collision, all railway traf-

fic over the bridge was suspended for a period of eight days. Three railway companies filed claims for expenses incurred as a result of traffic delay and the rerouting of railway traffic.

The trial court acknowledged the general principle that "the absence of physical damage to any property of the railway companies does not, by itself, preclude recovery for the additional expense the railway companies incurred (the economic loss)." *Gypsum Carrier, Inc. v. Her Majesty the Queen, supra* at 12. In reviewing the law and formulating the appropriate criteria for evaluating the liability for damages, the court stated at 26,

> In my opinion, the test of foreseeability (including "proximity" as described by Lord Atkin) is a relevant test to apply in the case before me. But it must be combined with, or followed by, what is, I think a third approach.
>
> To my mind, economic loss, even though forseeable, ought not to be recoverable unless it results directly from the careless act. . . .

In reaching that determination, and concluding that the railway companies could not recover for economic losses resulting from rail traffic delay, the Court referred to the following excerpts from the decision in *Donoghue v. Stevenson*, [1932] A.C. 562, at 581:

> You must take reasonable care to avoid acts or omissions which you can reasonably foresee would be likely to injure your neighbour. Who, then, in law is my neighbour? The answer seems to be—persons who are so closely and directly affected by my act that I ought reasonably to have them in contemplation as being so affected when I am directing my mind to the acts or omissions which are called in question. This appears to me to be the doctrine of *Heaven v. Pender*, as laid down by Lord Esher (then Brett M.R.) when it is limited by the motion of proximity introduced by Lord Esher himself and A. L. Smith L. J. in *Le Lievre v. Gould*. Lord Esher says: "That case established that, under certain circumstances, one man may owe a duty to another, even though there is no contract between them. If one man is near to another, or is near to the property of another, a duty lies upon him not to do that which may cause a personal injury to that other, or may injure his property." So A. L. Smith L. J.: "The decision of *Heaven v. Pender* was founded upon the principle, that a duty to take due care did arise when the person or property of one was in such proximity to the person or property of another that, if due care was not taken, damage might be done by the one to the other." I think that this sufficiently states the truth if proximity be not confined to mere physical proximity, but be used, as I think it was intended, to extend to such close and direct relations that the act complained of directly affects a person whom the person alleged to be bound to take care would know would be directly affected by his careless act.

In conclusion, it was held in *Gypsum Carrier, Inc. v. Her Majesty the Queen, supra,* that under the reasonably foreseeable and direct consequence tests "the railway companies were not persons so closely and directly affected that those having charge of the vessel ought reasonably to have had the railways in contemplation when the vessel was proceeding towards the bridge . . ." (*Id.* at 33); that "the railways' economic loss was not, in my opinion, a direct and reasonably foreseeable result of the striking of the bridge by the vessel." *Id.* at 34. Therefore, the claims for economic loss were denied.

In addition to the decision in the *Gypsum Carrier* case, Justice Addy relied upon another recent Canadian opinion disclosing a similar fact pattern. In *Star Village Tavern v. Nield and Ken Cook Ltd.,* [1976] 6 W.W.R. 80 (Hamilton, J. Man. Q.B.), a motor vehicle collided with a bridge spanning the Red River in Manitoba, Canada. The resultant damage closed the bridge for approximately one month, and the detour of all traffic increased the traveling distance from Selkirk, Manitoba to plaintiff's tavern from the normal 1½ miles to 15 miles.

Plaintiff brought an action against the negligent operator of the motor vehicle for the economic loss to his tavern business resulting from the reduced patronage while the bridge was in disrepair. Finding that such damages were beyond the reasonable contemplation of the misfeasant, the court stated at 83:

> [T]here must be some link between the wrongdoer and the person suffering loss. . . . [I]t appears that the test of foreseeability remains. That test confirms the limits of liability within reason. To abandon it places compensation at large and within the limitless discretion of the judiciary.

Finally, Justice Addy analyzed these precedents, and the cases cited therein, in light of the recent decision of the Supreme Court of Canada in *Rivtow Marine Ltd. v. Washington Iron Works,* [1974] S.C.R. 1189. This was a products liability action for damages incurred as a result of the defective design and manufacture of two pintle-type cranes installed on plaintiff's log barge, the Rivtow Carrier, for the purpose of loading logs. Defendants had both been aware for some time that the pintle-type cranes were subject to cracking due to negligent design, but neither company warned plaintiff of the potential danger and accompanying necessity for repair. Plaintiff sued for the cost of repairing the cranes and for the loss of use of the Rivtow Carrier during the repair period. The Supreme Court of Canada approved the award of damages for economic loss, in the absence of direct physical harm, where a defendant was duty-bound to exercise reasonable care to the foreseeable plaintiff. The Court, speaking through Ritchie, J., stated at 1215:

> [I] am satisfied that in the present case there was a proximity of relationship giving rise to a duty to warn and that the damages awarded by the learned trial judge were recoverable as compensation for the direct and demonstrably foreseeable result of the breach of that duty.

Applying the foregoing legal precedents to the facts before him, Justice Addy concluded, in the particular language of the *Rivtow Marine* case, that there was no relationship between the claimants and the Bethlehem Steel Corporation of sufficient proximity that gave rise to a duty to claimants. *See, Bethlehem Steel Corporation v. The St. Lawrence Seaway Authority, supra* at 6. The court furthermore held that there was no threat of physical harm to the property of the claimants caused by the Bethlehem Steel Corporation. *Id.* at 10. Having so concluded, Justice Addy disallowed the claims of both the National Steel Corporation and the Wayne Soap Company, having also determined that the latter claimant was "still further removed from the orbit of responsibility of Bethlehem Steel." *Id.* at 11. The judgment entry which made final the disposition of the foregoing claims and others similarly pressed in the Federal Court of Canada, was entered on August 22, 1977. Attached to the Supplement to Plaintiff's Motion to Dismiss all Claims is a Certificate of Search, wherein the Registry Officer of the Federal Court of Canada, Trial Division certified that no appeal had been filed against the August 22, 1977 Judgment of Justice Addy as of October 3, 1977, three days after the statutory time limit for filing such an appeal.

Upon a thorough examination of the judgment order of Justice Addy, together with each of the decisions cited therein, this Court reaches the inexorable conclusion that the law of Canada, in its current posture, denies any recovery for economic losses resulting from vessel delay as presented in the instant litigation by the claims filed before this Court and the Federal Court of Canada. Indeed, in accordance with its earlier determination that the *lex loci delicti commissi* controls the issues of substantive law raised in this proceeding, the Court must follow the rulings of Justice Addy as the law of Canada most directly in point (in view of the identity of the factual and legal issues presented both here and in the Canadian proceedings).

In their supplemental brief in opposition to plaintiff's Motion to Dismiss, claimants assert that the law of Canada, as applied by

Justice Addy, contravenes the manifest domestic policy of the United States, citing in support of this proposition, two district court decisions awarding damages for economic losses incurred as a result of vessel delay, viz., *In Re Lyra Shipping Company, Ltd.*, 360 F.Supp. 1188 (E.D.La.1973) and *In Re China Union Lines, Ltd.*, 285 F.Supp. 426 (S.D.Tex.1967). While the Court acknowledges these rulings, it nonetheless remains cognizant of the decision in *Petition of Kinsman Transit Company*, 388 F.2d 821 (2d Cir. 1968), which, along with *Palsgraf v. Long Island R. R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), has become textbook tort law with respect to the doctrines of foreseeability and remoteness of damage. In *Kinsman*, the Court of Appeals for the Second Circuit confronted claims for economic losses resulting from the blockage of the Buffalo River after two vessels collided with the Michigan Avenue Bridge. The Court stated at 388 F.2d 824, 825:

> On the previous appeal we stated aptly: "Somewhere a point will be reached when courts will agree that the link has become too tenuous—that what is claimed to be consequence is only fortuity." 338 F.2d at 725. We believe that this point has been reached with the Cargill and Cargo Carriers claims. Neither the Gillies nor the Farr suffered any direct or immediate damage for which recovery is sought. The instant claims occurred only because the downed bridge made it impossible to move traffic along the river. Under all the circumstances of this case, we hold that the connection between the defendants' negligence and the claimants' damages is too tenuous and remote to permit recovery. "The law does not spread its protection so far." Holmes, J., in *Robins Dry Dock, supra [Robbins Dry Dock and Repair Co. v. Flint]*, 275 U.S. [303] at 309, 48 S.Ct. [134] at 135, 72 L.Ed. 290.
>
> In the final analysis, the circumlocution whether posed in terms of "foreseeability," "duty," "proximate cause," "remoteness," etc. seems unavoidable. As we have previously noted, 338 F.2d at 725, we return to Judge Andrews' frequently quoted statement in *Palsgraf v. Long Is-*

*land R. R.*, 248 N.Y. 339, 354–355, 162 N.E. 99, 104, 59 A.L.R. 1253 (1928) (dissenting opinion): "It is all a question of expediency * * * of fair judgment, always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind." (footnotes omitted).

■ Moreover, the Court cannot disregard the controlling principle of *lex loci delicti commissi* which the Supreme Court adopted in *Black Diamond S. S. Corporation v. Robert Stewart & Sons,* 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754 (1949). Therein, at 395–396, 69 S.Ct. at 627, the Supreme Court stated:

> But if it is the law of Belgium that the wrong creates no greater liability than that recognized by the Convention of 1924, we cannot, without more, regard our own statutes as expanding the right to recover. Any other conclusion would disregard the settled principle that, in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred. *Smith v. Condry,* 1 How. 28, 33, 11 L.Ed. 35; *Slater v. Mexican National R. Co.,* 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900; *Cuba R. Co. v. Crosby,* 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274, 38 L.R.A.,N.S., 40; *Western Union Telegraph Co. v. Brown,* 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457.

Quite simply, plaintiff's case law references do not constitute an "overriding domestic policy translated into law." Furthermore, as stated by the Supreme Court of the United States in *Cuba Railroad Company v. Crosby,* 222 U.S. 473, 478, 32 S.Ct. 132, 56 L.Ed. 274 (1912):

> The law of the forum is material only as setting a limit of policy beyond which such obligations will not be enforced there. With very rare exceptions the liabilities of parties to each other are fixed by the law of the territorial jurisdiction within which the wrong is done and the parties are at the time of doing it.

*American Banana Co. v. United Fruit Co.* 213 U.S. 347, 356, 29 S.Ct. 511, 53 L.Ed. 826, 832, 16 A. & E.Ann.Cas. 1047. See *Bean v. Morris*, 221 U.S. 485, 486, 487, 31 S.Ct. 703, 55 L.Ed. 821, 823. That, and that alone, is the foundation of their rights.

It may be contended that there exists an overriding domestic policy for providing redress for the wrongful acts of negligent tortfeasors. It may even be asserted that the test of foreseeability, which is generally adhered to by the courts of Canada and which was applied herein by Justice Addy, itself constitutes an established precept of tort law supporting the domestic policy of succoring the aggrieved complainant. It does not follow, however, that all logical (or attenuated) extensions of a given tenet of law, or the application thereof to the myriad permutations of factual circumstances, rise to the level of domestic policy, much less to the level of domestic policy sufficient in depth and weight to override the controlling law of a foreign nation. Indeed, the doctrine of *lex loci delicti commissi* is itself derived from a domestic and international policy of comity and *comitias gentium.* To accede to complainants' argument would emasculate existing domestic and international policy and accord only salutory recognition to the overriding principle of *lex loci delicti.*

The Court is therefore compelled to adopt the rulings of the Federal Court of Canada on the issues of substantive law presented herein, and the 22 claims filed in this proceeding for damages resulting from vessel delay, as well as the 17 individual actions previously referred to which raise the same issues confronted herein, must be dismissed under the law of Canada.

Accordingly, IT IS ORDERED that the claims of the following claimants be, and the same are hereby, dismissed with prejudice at claimants' cost:

1. Marriott Corporation, through its division, Sunline Agencies and Oceanic Sunline Special Shipping Company.
2. Weyerhaeuser Company, through its division, Weyerhaeuser Line.
3. A/S Rederiet Odfjell.
4. Polski Linie Ocaniczne.
5. Naviera Alcala, S.A.
6. Matthew Shipping Company Limited and Matthew Ship Chartering Limited.
7. I.S. Joseph Shipping Co., Ltd.
8. Manchester Lines, Inc.
9. Naviera Ceresio, S.A.
10. Scindia Steam Navigation Ltd.
11. Federal Commerce and Navigation [1974] [Ltd.]
12. Skips A/S Westray.
13. Hyman-Michaels Company.
14. Jadranska Slobodna Plovidba.
15. Ocean Transport, Inc.
16. Kommanditgesellschaft Great Lakes Transcaribbean Line G.M.B.H. and Co.
17. Richmond Shipping Limited and Cast Shipping Limited.
18. Luria Brothers & Company, Inc.
19. Murmansk Shipping Company.
20. Black Sea Shipping Company.
21. Kurt Orban Company, Inc.
22. Parcel Tankers, Inc.

In view of the foregoing resolution and disposition of all outstanding claims in this case, all pending motions to compel discovery, (to wit: 12 separate Motions to Compel Answers to Interrogatories and 11 separate Motions for Production of Documents, all filed by plaintiff), are hereby rendered moot and are, accordingly, denied. The Complaint filed by Bethlehem Steel Corporation for the limitation of liability is also rendered moot by the dismissal of all claims filed herein, and is accordingly dismissed with prejudice at claimants' cost.

IT IS FURTHERMORE ORDERED that the following individual actions which were originally filed in this Court and subsequently stayed pending a resolution of the claims filed in the instant proceeding, are, for the same reasons herein announced, hereby dismissed with prejudice at plaintiffs' cost:

1. *Sunline Agencies, et al. v. Bethlehem Steel Corporation,* C74–1170.

2. *Weyerhaeuser Line, etc. v. Bethlehem Steel Corporation, C74–1174.*

3. *A/S Rederiet Odfjell v. Bethlehem Steel Corporation, C74–1180.*

4. *Polski Linie Ocaniczne v. Bethlehem Steel Corporation, C74–1196.*

5. *Naviera Alcala S.A. v. Bethlehem Steel Corporation, C74–1197.*

6. *Matthew Shipping Company Limited, et al. v. Bethlehem Steel Corporation, C74–1199.*

7. *I. S. Joseph Shipping Co., Ltd. v. Bethlehem Steel Corporation, C74–1200.*

8. *Manchester Liners, Ltd. v. Bethlehem Steel Corporation, C74–1201.*

9. *Naviera Ceresia, S.A. v. Bethlehem Steel Corporation, C74–1202.*

10. *Scindia Steam Navigation, Ltd. v. Bethlehem Steel Corporation, C74–1203.*

11. *Federal Commerce and Navigation [1974] [Ltd.] v. Bethlehem Steel Corporation, C74–1204.*

12. *Skips A/S Westray v. Bethlehem Steel Corporation, C74–1213.*

13. *Hyman-Michaels Company v. Bethlehem Steel Corporation, C75–2.*

14. *Jadranska Slobodna Plovidba v. Bethlehem Steel Corporation, C75–3.*

15. *Ocean Transport, Inc. v. Bethlehem Steel Corporation, C75–38.*

16. *Kommanditgesellschaft Great Lakes Transcaribbean Line G.M.B.H. and Co. v. Bethlehem Steel Corporation, C75–39.*

17. *Richmond Shipping Limited, et al. v. Bethlehem Steel Corporation, C75–40.*

The foregoing individual actions shall be dismissed pursuant to Rule 58, Fed.R.Civ.P., by separate entries of final judgment which shall refer to and incorporate therein this final judgment order.

IT IS SO ORDERED.